AO 120 (Rev. 08/10)

| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court _____ on the following

☐ Trademarks or    ☐ Patents.    ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| PLAINTIFF | | DEFENDANT |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | |
|---|---|---|
| | ☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

ABS-CBN CORPORATION, a
Philippines corporation,
ABS-CBN FILM PRODUCTIONS, INC.
d/b/a Star Cinema, a Philippines corporation,
and ABS-CBN INTERNATIONAL, a
California corporation,

      Plaintiffs,

vs.

123FULLPINOYMOVIES.COM;
2LAMBINGAN.SU;
CITIZENSDEBATE.SPACE;
DRAMASMP4HD.COM;
FANTASERYE.SU; FILIKULA.SE;
HDFULLPINOYMOVIES.XYZ;
HDPINOY.COM;
IWANTPINOYMOVIES.COM;
KIPIASOFT.SU a/k/a
PINOYHDLAMBINGAN.SU a/k/a
PINOYSTELESERYE.SU a/k/a
PINOYTELESERYETAMBAYAN.NET
a/k/a
PINOYTVREPLAYTAMBAYANLAMBIN
GANTELESERYE.SU a/k/a
PINOYTVTAMBAYANREPLAY.SU;
PINOYREPLAYTVSHOWS.SU;
LAMBINGANTVOFW.SU a/k/a
PINOYLAMBINGANTVREPLAY.NET;
LAMBINGANTVTELESERYE.SU a/k/a
PINOYLAMBINGANOFW.SU a/k/a
WOWLAMBINGAN.NET;
LUMANGSERIES.NET;
MEDIATECHWEEK.LIVE;
MOVIESNIPIPAY.COM;
OFWPINOYCHANNEL.COM a/k/a
PINOYLAMBINGANNETWORK.COM;
OFWPINOYTVCHANNEL.COM;
PARIWIKI.AE; PHTV.ONE;
PINOYBARKADA.ORG; PINOYBAYS.SU;
PINOYCHANNEL.CC;
PINOYCHANNELAKO.SU;
PINOYFLIXTVS.SU a/k/a

PINOYSTVREPLAY.SU;
PINOYLAMBINGANTELESERYES.SU;
PINOYLAMBINGANHDREPLAY.NET
a/k/a PINOYLAMBINGANTVREPLAY.SU
a/k/a
PINOYSLAMBINGANTVREPLAY.SU
a/k/a PINOYSREPLAYTV.SU a/k/a
PINOYTELESERYEAKO.SU a/k/a
PINOYTELESERYETAMBAYAN.SU a/k/a
PINOYTAMBAYANAKO.SU a/k/a
PINOYTELESERYECHANNEL.SU a/k/a
PINOYTELESERYEREPLAYS.SU;
PINOYMOVIESERIES.COM;
PINOYMOVIESHUB.ME;
PINOYMOVIESS.SU;
PINOYREPLAYLAMBINGAN.SU;
PINOYTAMBAYANA.SU a/k/a
PINOYTVTELESERYES.SU;
PINOYTELESERYELIVE.COM;
PINOYTELESERYETVREPLAYS.SU a/k/a
PINOYTVLAMBINGANHD.SU a/k/a
TELESERYENETWORK.SU;
PINOYTVREPLAY.PH;
PINOYTVTAMBAYANREPLAY.NET;
REPLAYPINOYTV.SU a/k/a
WOWPINOYTVREPLAY.SU; THE--
NORTHFACE.CO.UK;
LAMBINGANTELESERYE.SU;
LIBANGAN.RU; BEYHADH.SU;
DRAMASCOOL.SITE; DRIVER1.CO;
HDFULLPINOYMOVIES.ORG;
HDFULLTAGALOGMOVIES.COM;
PINOYSTAMBAYAN.COM;
PINOYTELESERYETVREPLAY.SU;
PINOYTVEMBED.COM;
PINOYTVRECAP.COM, EACH AN
INDIVIDUAL, PARTNERSHIP OR
UNINCORPORATED ASSOCIATION,

_____ Defendants. _____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ABS-CBN CORPORATION, Plaintiff ABS-CBN FILM PRODUCTIONS, INC.

d/b/a Star Cinema, and Plaintiff ABS-CBN INTERNATIONAL (hereinafter collectively,

"Plaintiffs" or "ABS-CBN"), by and through their undersigned counsel, hereby sue Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A" hereto (collectively "Defendants"), and allege as follows:

## NATURE OF THE CASE

1.     This is an action for willful trademark and copyright infringement.  ABS-CBN is the largest media and entertainment company in the Republic of the Philippines (the "Philippines").  With its twelve large production studios, ABS-CBN produces thousands of hours of original content every year for its numerous television stations, including daily drama teleseries, drama anthologies, movies, musical and variety shows, game shows, reality shows, news programs, current affairs programs, documentaries, music video 24/7 (Myx), AM talk radio with DJ live on-screen (DZMM), FM radio shows with DJ live on-screen (MOR), and public affairs programs.  Every day, ABS-CBN's programming is broadcast worldwide through its agreements with dozens of cable companies' premium channels, telecom provider partnerships, Internet subscription services, and through its own 24-hour cable and satellite service, which offers pay-per-view programming.

2.     Like many creators of movies and television content, ABS-CBN is confronted with the online infringement of the intellectual property in its programs and brands by pirate websites operating under a variety of domain names, including through the Internet websites operating under Defendants' individual, partnership, and/or business association names identified on Schedule "A" hereto (the "Subject Domain Names"). Through their websites operating under the Subject Domain Names, Defendants advertise and hold out to the public that they have ABS-CBN's copyrighted content and perform ABS-CBN's copyrighted content over

3

the Internet, in order to illegally profit from ABS-CBN's intellectual property, without ABS-CBN's consent.

3.       On information and belief, Defendants, including specifically through the websites operating under the Subject Domain Names, provide on-demand streaming performances of full-length versions of ABS-CBN's movies and television shows through their respective websites. On information and belief, Defendants facilitate access to infringing content which is streamed through their respective websites operating under the Subject Domain Names, rather than users of the websites uploading the content.  On information and belief, Defendants often display the latest content to their servers soon after the initial premier.  Further, on information and belief, Defendants control the organization and presentation of the content by themselves, provide links to ABS-CBN content, identify the content as ABS-CBN's through the use of ABS-CBN's trademarks, distribute and perform such content under ABS-CBN's trademarks, and stream such content for users' viewing through their websites operating under the Subject Domain Names.

4.       On information and belief, Defendants profit from their infringement at an enormous cost to ABS-CBN.  Defendants are responsible for many infringements of ABS-CBN's copyrighted movies, television shows, and trademarks. Through these infringements, Defendants are causing substantial harm to ABS-CBN, which has made significant investments of money, time and creative energies to produce the content and to develop its intellectual property, technical platform, branding, promotions, sales, and goodwill around its content and distribution services.  Moreover, because ABS-CBN operates worldwide, including through partnership agreements with premium cable channels, through its own Internet pay subscription service, and through its own 24-hour pay-per-view programming, free streaming of ABS-CBN's

content by Defendants deprives ABS-CBN of substantial revenue that would otherwise be derived from consumers; deprives ABS-CBN's legitimate digital and broadcast advertisers and sponsors from having their ads and commercials viewed by these consumers; diverts customers worldwide from its subscription services and confuses consumers as to the source and legitimacy of its content and distribution channels; harms ABS-CBN's ability to continue to build out its paying customer base, particularly in international markets and the United States; and interferes with and harms ABS-CBN's distribution and sponsorship agreements, hurting its and its partners' profits and reputations.

5.      Defendants' websites operating under the Subject Domain Names are classic examples of pirate operations, having no regard whatsoever for the rights of ABS-CBN and willfully infringing ABS-CBN's intellectual property.   As a result, ABS-CBN requires this Court's intervention if any meaningful stop is to be put to Defendants' piracy.

## JURISDICTION AND VENUE

6.      This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq.*; and copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*. The registered and unregistered copyrighted works at issue herein are foreign works produced in the Philippines, a Berne Convention signatory.

7.      This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 *et seq*., 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark and copyright claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

9. Defendants are subject to personal jurisdiction in this District because they target business activities towards consumers in the State of Florida through their advertisement, promotion, distribution, and performance of pirated ABS-CBN copyrighted content via their unauthorized Internet-based content distribution services, including through the use of ABS-CBN's trademarks. Defendants' websites operating under the Subject Domain Names are fully accessible in this District and, upon information and belief, Defendants infringe ABS-CBN's intellectual property rights in this District. Finally, upon information and belief, Defendants cause harm to ABS-CBN's business within this District by diverting customers in this District and within the State of Florida to their unauthorized Internet-based content distribution service through, at least, the websites operating under the Subject Domain Names. Defendants, through their illegal distribution service, are directly and unfairly competing with ABS-CBN's economic interests in the State of Florida and causing ABS-CBN harm within this jurisdiction. ABS-CBN regularly enforces its intellectual property rights and authorized this action to be brought in its name.

10. Venue is proper in this Court pursuant 28 U.S.C. § 1391(b) because Defendants are, on information and belief, non-resident aliens, and thus may be sued in "any judicial district in which any defendant is subject to the Court's personal jurisdiction with respect to such an action,' as set forth above. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(c) because a "defendant not resident in the United States may be sued in any judicial district."

Finally, Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a), which states that "civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights… may be instituted in the district in which the defendant or his agent resides or may be found." Defendants may be found in this district, as they are subject to personal jurisdiction herein.

## THE PLAINTIFFS

11.     ABS-CBN Corporation is a public Philippines corporation with its principal place of business located in Quezon City, Philippines.

12.     ABS-CBN Film Productions, Inc. is a Philippines corporation and wholly-owned subsidiary of ABS-CBN Corporation with its principal place of business located in Quezon City, Philippines.

13.     ABS-CBN International is a California corporation and wholly-owned subsidiary of ABS-CBN Corporation with its principal place of business located at 2001 Junipero Serra Boulevard, Suite 200, Daly City, California 94014.

14.     Plaintiff, ABS-CBN International, is, and at all times relevant hereto has been, the registered owner of the trademarks identified on Schedule "B" hereto (collectively, the "ABS-CBN Registered Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "ABS-CBN Registered Marks"). The ABS-CBN Registered Marks are used in conjunction with high quality services in the categories identified in Schedule "B" hereto. True and correct copies of the Certificates of Registration for the ABS-CBN Registered Marks are attached hereto as Exhibit "1."

15.     The ABS-CBN Registered Marks have been used in interstate commerce for many years to identify and distinguish ABS-CBN's high-quality services for an extended period of time and serve as symbols of ABS-CBN's quality, reputation, and goodwill.

16.     The ABS-CBN Registered Marks have never been assigned or licensed to the Defendants in this matter.

17.     The ABS-CBN Registered Marks are symbols of ABS-CBN's quality, reputation, and goodwill and have never been abandoned.

18.     ABS-CBN International is also, and at all times relevant hereto has been, the owner of all rights in and to the common law trademark (the "ABS-CBN Common Law Trademark") identified on Schedule "C" hereto.

19.     The ABS-CBN Common Law Trademark is used in conjunction with high quality products and services, including entertainment content distribution services.

20.     The ABS-CBN Common Law Trademark has been used in interstate commerce for many years to identify and distinguish ABS-CBN's high-quality entertainment content distribution services and serves as a symbol of ABS-CBN's quality, reputation, and goodwill.

21.     The ABS-CBN Common Law Trademark has never been assigned or licensed to the Defendants in this matter.

22.     The ABS-CBN Common Law Trademark is a symbol of ABS-CBN's quality, reputation, and goodwill and has never been abandoned.

23.     Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law trademark are referred to herein as the "ABS-CBN Marks." ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International all share exclusive rights in and to the ABS-CBN Marks. Moreover, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International are all licensed to use and enforce the ABS-CBN Marks.

24.     The ABS-CBN Marks have been used by ABS-CBN long prior in time to Defendants' use of copies of those Marks. The ABS-CBN Marks have never been assigned or licensed to any of the Defendants in this matter.

25.     ABS-CBN Film Productions, Inc. is the owner of the copyrights registered in the United States of America in and to the movies on Schedule "D" hereto. Upon information and belief, ABS-CBN's registration of the works identified on Schedule "D" hereto pre-dates Defendants' infringement thereof.

26.     Additionally, ABS-CBN Corporation is the owner of many unregistered copyrighted works, originally produced in the Philippines, a Berne Convention signatory. Examples of these works are identified in Exhibit "3" to the Complaint, and include, but are not limited to, various episodes of the television series entitled "Ang Probinsyano," "Make It With You," "Love Thy Woman," and "Wildflower."

27.     The copyrighted works identified on Schedule "D" hereto, in addition to any unregistered works owned by ABS-CBN Corporation, are collectively referred to herein as the "Copyrighted Works." True and correct copies of the Certificates of Registration for the registered ABS-CBN Copyrighted Works are attached hereto as Exhibit "2."

28.     Moreover, ABS-CBN Corporation, ABS-CBN International, and ABS-CBN Film Productions, Inc. all share exclusive rights in and to the Copyrighted Works. ABS-CBN Corporation, ABS-CBN International, and ABS-CBN Film Productions, Inc. are all licensed to distribute, perform, and enforce their rights to the Copyrighted Works.

29.     ABS-CBN is the largest media and entertainment company in the Philippines. All of ABS-CBN's TV shows and movies are initially produced in the Philippines. ABS-CBN's Filipino-centric content is then distributed throughout the world via customer-paid subscriptions,

including through numerous cable companies' premium channels and telecom provider partnerships, such as with DirecTV, Time Warner Cable, Cox Communications, Comcast, AT&T, Verizon Services Corp., Braintree Cable, Cablevision, CC Communications, Centurytel, Champion Broadband, Charter, Duncan Cable TV, En-Touch, Frontier Communications, GCI Cable, Golden Rain Foundation, Groton Utilities, Hawaiian Telecom, ICable, KPU CommVision, MCV, MTA Communications, Norwood Light Dept., OpenBand Media, OSN, Phonoscope, Rainier Cable TV, RCN, Rogers, San Bruno Cable, Service Electric, Shaw, Starhub, Summit Broadband, SureWest, Tacoma Public Utilities, TVMax, Wave Broadband, Windjammer Cable, Zito Media, and many more.

30.     In addition, ABS-CBN's content is distributed by ABS-CBN through Internet subscription services, such as TFC.TV and IWANTV.COM.PH, as well as through their own 24-hour cable and satellite service TFC (The Filipino Channel) and TFC IPTV, which offers Pay-Per-View programming.  The TFC.TV portal is meant to provide its customers with improved navigation and easier access to the latest ABS-CBN shows and content.  In addition, it also includes a premium subscription package, which includes over 160+ Entertainment shows, 50+ News shows, 8+ Live shows, and 300+ Movies.

31.     ABS-CBN has expended substantial time, money, and other resources developing, advertising, and promoting the ABS-CBN Marks, Copyrighted Works, and its distribution methods and services.

32.     As a result of ABS-CBN's efforts, members of the consuming public readily identify services and content bearing the ABS-CBN Marks and promoted under the ABS-CBN Marks as high-quality services and entertainment content.

33.     Genuine and authorized ABS-CBN services and content are widely legitimately advertised, promoted, and distributed by ABS-CBN and its authorized partners. Over the course of the past five to seven years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to ABS-CBN's overall marketing and consumer education efforts. Thus, ABS-CBN expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow ABS-CBN and its authorized partners to fairly and legitimately educate consumers about the value associated with the ABS-CBN brand and the content promoted thereunder.

34.     ABS-CBN creates and distributes content serving the worldwide Filipino community.  This includes the populace of the Philippines, estimated at 92.3 million persons, as well as the substantial overseas community, which is estimated at between 10.5 million and 13.5 million persons.  *See* http://www.census.gov.ph/; http://en.wikipedia.org/wiki/Overseas_Filipino.

35.     The United States hosts the largest population of Filipinos outside the Philippines. *Id*.  Filipinos are estimated by the U.S. State Department to be the second-largest Asian-American group in the country.   *See* http://en.wikipedia.org/wiki/Overseas_Filipino; U.S. Department of State, *U.S. Relations with the Philippines, Bureau of East Asian and Pacific Affairs Fact Sheet* (Jan. 31, 2014) (http://www.state.gov/r/pa/ei/bgn/2794.htm).   In addition, Tagalog is the fifth most spoken language in the U.S.   *See* http://en.wikipedia.org/wiki/Overseas_Filipino.   Moreover, Florida is the state with the ninth largest Filipino American population.   *See* http://en.wikiedia.org/wiki/Demographics_of_Filipino_Americans. Florida is a critical market in the United States for ABS-CBN's business given the size of the State's Filipino community.

## THE DEFENDANTS

36.     Defendants operate through the Subject Domain Names and are comprised of individuals, partnerships and/or business entities of unknown makeup, which, upon information and belief, reside and/or operate in foreign jurisdictions. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Upon information and belief, Defendants' websites operating under the Subject Domain Names are fully accessible in this District and throughout the United States of America.

37.     Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses.

38.     Upon information and belief, Defendants are directly and personally contributing to, inducing, and engaging in trademark and copyright infringement, as alleged herein.

39.     Defendants are part of an ongoing conspiracy to create and maintain an illegal online distribution network of ABS-CBN's and others' intellectual properties which (i) confuses consumers as to the source of Defendants' infringing content and the legitimacy of its distribution service and (ii) expands the marketplace for illegal distribution services of pirated content while shrinking the legitimate marketplace for genuine distribution services of ABS-CBN's Copyrighted Works. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the ABS-CBN name and associated trademarks, as well as the destruction of the legitimate market sector in which it operates.

40.     Defendants are the past and present conscious forces behind the operation of, at least, the websites operating under the Subject Domain Names.

41.     On information and belief, Defendants directly engage in unfair competition with ABS-CBN by (i) advertising, offering for distribution, promoting, and performing ABS-CBN's

12

Copyrighted Works without authorization under counterfeits and infringements of ABS-CBN's trademarks to consumers within the United States and within this district through the fully accessible websites operating under the Subject Domain Names, as well as additional domains and websites not yet known to ABS-CBN, and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from legitimate distribution services of the Copyrighted Works offered by ABS-CBN and its partners. Defendants have purposefully directed some portion of its illegal activities towards consumers in the State of Florida through the advertisement, offers to perform, and performance of ABS-CBN's Copyrighted Works in the State. On information and belief, Defendants' websites operating under the Subject Domain Names are accessible in the Southern District of Florida and infringements of ABS-CBN's intellectual property are viewable thereon in the Southern District of Florida.

42.     On information and belief, Defendants have registered, established, or purchased, and maintained their respective Subject Domain Names, and the websites operating thereunder. On information and belief, Defendants have anonymously registered and maintained the Subject Domain Names for the sole purpose of engaging in illegal activities.

43.     On information and belief, Defendants will continue to register, transfer, and/or acquire new domain names, and consequently new URL addresses in connection therewith, for the purpose of infringing ABS-CBN's intellectual property unless preliminarily and permanently enjoined. Moreover, on information and belief, Defendants will continue to maintain and grow their illegal distribution service network at ABS-CBN's expense unless preliminarily and permanently enjoined.

44.     Defendants' entire Internet-based website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of ABS-CBN and others.

45.     Defendants' business names (*i.e.*, the Subject Domain Names, corresponding URLs, and any other domain names or corresponding URLs used in connection with infringing ABS-CBN's trademarks or copyrights), are essential components of Defendants' infringing activities.  The Subject Domain Names themselves are a significant part of the means by which Defendants further their infringing scheme and cause harm to ABS-CBN in that they cause and effect the infringement as described herein. Moreover, Defendants are using ABS-CBN's famous name, trademarks, and Copyrighted Works to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thus increasing the value of the Subject Domain Names and decreasing the size and value of ABS-CBN's legitimate common marketplace at ABS-CBN's expense.

## FACTUAL ALLEGATIONS

### A.     *Defendants' Domain Names and Associated Websites.*

46.     On information and belief, and at all times relevant hereto, Defendants in this action have had full knowledge of ABS-CBN's ownership of the ABS-CBN Marks and the Copyrighted Works, including its exclusive rights to use, perform, distribute, and license such intellectual property and the goodwill associated therewith.

47.     Defendants advertise ABS-CBN's Copyrighted Works to the public and use the ABS-CBN Marks to distribute and perform such content.  *See* Exhibit 3 attached hereto, examples of Defendants' infringement of the ABS-CBN Marks and Copyrighted Works. Defendants use the ABS-CBN Marks, without authorization, to attract consumer traffic to their

websites operating under the Subject Domain Names and to distribute and perform infringements of the Copyrighted Works available thereon. *See Id.*

48.     ABS-CBN's representatives have viewed the infringements of the ABS-CBN Marks as well as infringements of ABS-CBN's Copyrighted Works on Defendants' websites operating under the Subject Domain Names.

49.     Further, Defendants use the ABS-CBN Marks, without authorization, to falsely suggest the distribution methods for the infringing video content embedded on the websites operating under the Subject Domain Names for streaming are authorized, genuine distribution services approved, endorsed, and sponsored by ABS-CBN.  *See* Exhibit 3.

50.     Defendants' websites operating under the Subject Domain Names stream many of ABS-CBN's Copyrighted Works.  *See* Exhibit 3.

51.     On information and belief, Defendants' streaming of the video content also enables users to copy the Copyrighted Works.

52.     On information and belief, Defendants' websites operating under the Subject Domain Names are "closed websites," meaning that they do not allow users to make additions or changes to the websites, such that the content streamed through the websites can only be provided by the respective website's operators and are not embedded or uploaded by its visitors. On information and belief, the operators of Defendants' websites operating under the Subject Domain Names also insert the links provided on the websites through which users view ABS-CBN's video content in a player window on the respective website itself.  When a user clicks on the link to one of ABS-CBN's movies or television shows, Defendants' websites operating under the Subject Domain Names then stream the full-length version of the video.  This includes, but is

not limited to, the movies identified on Schedule "D" hereto and in Exhibit 2, as well as those unregistered works identified in paragraph 26 and in Exhibit 3.

53.     On information and belief, the large inventory of popular entertainment content available on Defendants' websites operating under the Subject Domain Names, including full-length copies of newly released movies, archived movies, and television show episodes – all available at the click of a button and often made available immediately after the original premiere – is provided in order to attract users to the infringing content.

54.     Defendants' Internet-based website businesses are illegal operations, infringing on the intellectual property rights of ABS-CBN through their distribution and performance of ABS-CBN's Copyrighted Works and using the ABS-CBN Marks to promote, advertise, and distribute such content.   On information and belief, Defendants are using identical copies of ABS-CBN's trademarks for different quality services. ABS-CBN has extensively and continuously used the ABS-CBN Marks before Defendants began offering counterfeit and confusingly similar imitations of ABS-CBN's distribution services. The net effect of Defendants' actions will cause confusion of consumers at the time of initial interest and during the use of the Defendants' illegal distribution services on their websites operating under the Subject Domain Names, who will believe Defendants' websites are legitimate, authorized distributors of ABS-CBN's Copyrighted Works or are authorized and/or approved by ABS-CBN.

55.     On information and belief, Defendants operate websites that serve only one purpose – to function as commercial online hubs for publicly providing performances of popular copyrighted content, including many of ABS-CBN's Copyrighted Works, over the Internet to many users, without authorization or license. On information and belief, Defendants effect this illegal scheme, in part, through the draw to consumers of ABS-CBN's Marks and Copyrighted

Works on their websites operating under the Subject Domain Names in order to achieve higher rankings in search engines.

56.     Defendants are infringing ABS-CBN's trademarks through their copying, use, distribution and/or performance of ABS-CBN's Copyrighted Works under the ABS-CBN Marks on the fully accessible Internet websites operating under the Subject Domain Names.

57.     Defendants are causing harm to ABS-CBN and the consuming public by (i) causing an overall degradation of the value of the goodwill associated with the ABS-CBN Marks, (iii) increasing ABS-CBN's overall cost to market its content and services and educate consumers about its brand via the Internet, and (iii) maintaining an illegal marketplace enterprise which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm ABS-CBN with impunity.

58.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, concurrently employing substantially similar and often times coordinated, advertising and SEO strategies based, in large measure, upon an illegal use of counterfeits and infringements of the ABS-CBN Marks and the ABS-CBN Copyrighted Works. Specifically, Defendants are using ABS-CBN's famous name and marks and/or the titles of the ABS-CBN Copyrighted Works in order to make their websites offering pirated performances of the ABS-CBN Copyrighted Works appear more relevant and attractive to search engines across an array of search terms. By their actions, Defendants have created an illegal marketplace operating in parallel to the legitimate marketplace for ABS-CBN's genuine services. Defendants are causing concurrent and indivisible harm to ABS-CBN and the consuming public by (i) depriving ABS-CBN of its right to fairly compete for space within search engine results and reducing the visibility of ABS-CBN genuine content and services on the World Wide Web, (ii)

causing an overall degradation of the value of the goodwill associated with the ABS-CBN Marks, (iii) increasing ABS-CBN's overall cost to market its services and educate consumers about its brand via the Internet, and (iv) maintaining an illegal marketplace enterprise, which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm ABS-CBN with impunity.

59.     On information and belief, Defendants are concurrently conducting and targeting their counterfeiting and infringing activities towards consumers and causing harm, and multiplying that joint harm in their efforts to maintain an illegal distribution network of copyrighted content using ABS-CBN's trademarks, within this district and elsewhere throughout the United States. As a result, Defendants are defrauding ABS-CBN and the consuming public for Defendants' benefit.

60.     Defendants' use of the ABS-CBN Marks and performances of the Copyrighted Works are without ABS-CBN's consent or authorization. Upon information and belief, Defendants in this action have had full knowledge of ABS-CBN's ownership of the ABS-CBN Marks and Copyrighted Works, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith.

61.     Defendants are engaging in the above-described illegal counterfeiting and infringement activities knowingly and intentionally or with reckless disregard or willful blindness to ABS-CBN's intellectual property rights for the purpose of trading on ABS-CBN's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public will continue to be harmed.

62.     Defendants' above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers and the public before, during, and after their use of the Defendants' illegal content distribution services. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers and the public into believing there is a connection or association between ABS-CBN and Defendants, which there is not.

63.     Given the visibility of Defendants' various websites and the similarity of their actions, including their SEO activities, it is clear Defendants are either related or, at a minimum, cannot help but know of each other's existence and the damage likely to be caused to ABS-CBN as a result of Defendants' concurrent actions.

64.     Although some Defendants may be acting independently, they may properly be deemed to be acting in concert because they are combining the force of their actions to multiply the harm caused to ABS-CBN.

65.     On information and belief and based on publicly available sources, by advertising, promoting and performing the Copyrighted Works, and encouraging, facilitating and assisting in the viewing and copying of the copyrighted content, Defendants' websites attract many page views each day.

66.     On information and belief, the infringement-driven traffic increases the volume of online advertising impressions and transactions, and thereby increases online advertising revenues and enables Defendants to charge advertisers higher rates, and reap significant profits thereby.  Moreover, the wrongfully obtained consumer traffic increases the value of the Subject Domain Names.  In these ways, the Defendants' business model critically depends on attracting users to view ABS-CBN's highly-valued Copyrighted Works.

67.     On information and belief, Defendants derive revenue from ad impressions, and the sale of highly valuable user analytic data, from and to the ad services that are operating on their websites operating under the Subject Domain Names.

68.     On information and belief, Defendants infringe, and induce, cause and/or materially contribute to the infringing activity of their users by distributing and performing, through the use of ABS-CBN's trademarks and identification of movies and television shows as ABS-CBN's, the Copyrighted Works.  *See* Exhibit 3.

69.     Defendants infringe, and induce, cause and/or materially contribute to the infringing activity of their users by frequently updating their inventory of content, often very shortly thereafter the original premier or broadcast in the Philippines, in order to tap into the known market for pirated Filipino-centric content and constantly promote to consumers the presence and availability of copies of ABS-CBN's Copyrighted Works, including movies currently in theaters and recently premiered television show episodes.

70.     Because Defendants cause the infringed content to be displayed on their websites operating under the Subject Domain Names and be streamed, they could stop the infringement at any point.

71.     However, Defendants do not implement any means to prevent infringement because to do so would defeat the very purpose for which the Subject Domain Names and associated websites exist – *i.e*., to provide copyrighted movies and television shows with Filipino content by infringing upon the intellectual property rights of the largest media company in the Philippines.

72.     Defendants have actual and constructive knowledge, or should have knowledge, of their and their users' infringement of ABS-CBN's Copyrighted Works and trademarks for at

least the reasons that:  (i) they insert and provide links to, organize by movie or television show title, and perform the infringing content for users; (ii) they distribute and perform the content under ABS-CBN's Marks; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's Copyrighted Works are highly popular in Filipino communities and Defendants profit as a direct result of performing that content.

73.    ABS-CBN has no adequate remedy at law.

74.    ABS-CBN is suffering irreparable and indivisible injury and has suffered substantial monetary damages as a result of Defendants' unauthorized and unlawful use of the ABS-CBN Marks and Copyrighted Works. If Defendants' counterfeiting and infringing, unfairly competitive activities, and their illegal marketplace enterprise are not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public will continue to be harmed.

75.    The harm and damage sustained by ABS-CBN has been directly and proximately caused by Defendants' infringing activities and by the creation, maintenance, and very existence of Defendants' illegal services.

**CLAIMS FOR RELIEF**

**Count One -- Trademark Counterfeiting and Infringement**

76.    ABS-CBN hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77.    This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeits, copies and/or colorable imitations of the ABS-CBN Marks on their websites operating under the Subject Domain Names, which distribute and perform infringements of ABS-CBN's Copyrighted Works (the "pirated content").

78.     Specifically, Defendants are distributing and performing the ABS-CBN Copyrighted Works using the ABS-CBN Marks, without authorization. *See* Exhibit 3.

79.     Defendants' counterfeiting and infringing use of the ABS-CBN Marks is likely to cause and actually is causing confusion, mistake, and deception among members of the general public as to the origin and quality of the pirated content as well as the legitimacy of Defendants' illegal distribution service.

80.     Defendants' indivisible and coordinated concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' counterfeit services.

81.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendants at ABS-CBN's expense.

82.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the ABS-CBN Marks in violation of ABS-CBN's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

83.     ABS-CBN has suffered and will continue to suffer irreparable injury due to Defendants' above described activities if Defendants are not temporarily, preliminarily and permanently enjoined.

**Count Two -- False Designation of Origin Pursuant to § 43(a) of the Lanham Act**

84.     ABS-CBN hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

85.     Defendants' illegal distribution services for the pirated content is using exact copies of the ABS-CBN Marks to perform and distribute the Copyrighted Works, including within many of ABS-CBN's important business markets, such as the State of Florida and the United States of America.

86.     Defendants are using the ABS-CBN Marks without authorization in connection with their illegal distribution services for the Copyrighted Works in violation of ABS-CBN's intellectual property rights and to intentionally confuse consumers into believing the pirated content and distribution services are sponsored and endorsed by ABS-CBN.  *See* Exhibit 3. Defendants' unauthorized use of the ABS-CBN Marks is designed to falsely suggest that their activities are sponsored and/or endorsed by ABS-CBN.   On information and belief, Defendants' unlawful use of the ABS-CBN Marks is designed to make their services appear legitimate in order to attract a larger number of viewers which results in larger advertising revenues for Defendants.

87.     Defendants, on information and belief, have used in connection with their illegal distribution services, false designations of origin and false descriptions and representations, including words or symbols which tend to falsely describe or represent such distribution services to the general viewing public, with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to ABS-CBN's detriment.

88.     Defendants have authorized infringing uses of the ABS-CBN Marks in connection with their illegal distribution service for the Copyrighted Works.   Defendants have misrepresented to members of the consuming public that the distribution services of pirated content to which Defendants are facilitating access to are genuine and authorized distribution

services of ABS-CBN, and that their distribution services for such content are sponsored and/or endorsed by ABS-CBN.

89.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Plaintiffs.

90.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.     ABS-CBN has no adequate remedy at law and has sustained injury and monetary damages caused by Defendants' conduct.  Absent an entry of an injunction by this Court, ABS-CBN will continue to suffer irreparable injury to their goodwill and business reputation, as well as monetary damages.

### Count Three -- Common Law Unfair Competition

92.     ABS-CBN hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

93.     This is an action against Defendants based on their (i) performance and distribution of pirated ABS-CBN content using marks which are identical, both visually and phonetically, to the ABS-CBN Marks and the (ii) creation and maintenance of an illegal ongoing service network in which viewers may access public performances of and copy the pirated ABS-CBN content, operating parallel to ABS-CBN's own Internet pay subscription service through which ABS-CBN promotes its genuine content, in violation of Florida's common law of unfair competition.

94.     Specifically, and as described above, Defendants are promoting, advertising, and otherwise facilitating access to and copying of the Copyrighted Works using the ABS-CBN Marks for the purpose of creating a veneer of legitimacy for Defendants' operation.  *See* Exhibit

3. Defendants, on information and belief, are infringing on ABS-CBN's intellectual property to unfairly compete with ABS-CBN and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web, for the purpose of earning a profit at the ABS-CBN's expense, thereby, collectively depriving ABS-CBN of a valuable marketing and educational tool which would otherwise be available to ABS-CBN and reducing the visibility of ABS-CBN's genuine services on the World Wide Web.

95.     Defendants' unlawful actions have caused and are continuing to cause confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' distribution services by their use of the ABS-CBN Marks.

96.     ABS-CBN has no adequate remedy at law and is suffering irreparable injury as a result of Defendants' actions, as well as monetary damages.

### Count Four -- Common Law Trademark Infringement

97.     ABS-CBN hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 75 as if set fully forth herein.

98.     This is an action for common law trademark infringement against Defendants based on their offering for distribution, distribution, offers to perform, and performance of the Copyrighted Works using ABS-CBN's Marks. ABS-CBN is the owner of all common law rights in and to the ABS-CBN Marks.

99.     Specifically, Defendants, upon information and belief, are offering for distribution, distributing, offering to perform and performing the Copyrighted Works using infringements of the ABS-CBN Marks.

100.     Defendants' unlawful actions have caused and are continuing to cause confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' distribution service using the ABS-CBN Marks.

101.     ABS-CBN has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

### Count Five -- Direct Infringement of Copyright

102.     ABS-CBN hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 75 as if fully set forth herein.

103.     ABS-CBN Film Productions, Inc. has registered and owns the copyrights in and to the movies identified on Schedule "D" hereto and in Exhibit "2." ABS-CBN Corporation owns the unregistered copyrights in and to the works identified in paragraph 26 and Exhibit 3, which were originally produced in the Philippines, a Berne convention signatory.

104.     Defendants have copied, performed, and distributed these works through their websites operating under the Subject Domain Names as part of a large scale and ongoing daily illegal enterprise. This illegal enterprise, without injunctive relief, will continue through the Subject Domain Names as well as through other domains owned now or in the future by the Defendants.

105.     Defendants are directly liable for infringing ABS-CBN's copyrighted works under the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

106.     Without authorization from any Plaintiff, or right under law, Defendants have directly infringed ABS-CBN's Copyrighted Works by their performance and distribution of those works used by Defendants to cause and effect the copying, performance and/or distribution

of those works through their websites operating under the Subject Domain Names to public users worldwide. *See* Exhibit 3.

107.    Defendants have actual and constructive knowledge, or should have knowledge, of their infringement of ABS-CBN's Copyrighted Works for at least the reasons that:  (i) they insert and provide links to, organize by show title, and perform the infringing content, and do so for the purpose of users' viewing of pirated content; (ii) they advertise and promote the content on their websites operating under the Subject Domain Names; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and  Defendants profit as a direct result of performing that content.

108.    The foregoing acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

109.    As a direct and proximate result of Defendants' infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

110.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendants at ABS-CBN's expense.

111.    Alternatively, ABS-CBN is entitled to the maximum statutory damages in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c), or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

112.    ABS-CBN is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

113.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

## Count Six -- Contributory Infringement of Copyright

114.    ABS-CBN hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 75 as if fully set forth herein.

115.    On information and belief, users of Defendants' websites operating under the Subject Domain Names have directly infringed ABS-CBN's copyrights, including the Copyrighted Works identified herein, by performing, copying and/or distributing works owned by ABS-CBN, without authorization, or right under law, in violation of the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

116.    Defendants are contributorily liable for their users' direct infringement of ABS-CBN's Copyrighted Works in violation of the Copyright Act.

117.    Defendants have actual and constructive knowledge, or should have knowledge, of their users' infringement of ABS-CBN's Copyrighted Works for at least the reasons that: (i) they insert and provide links to, organize by movie or television show title, and perform the infringing content, and do so for the purpose of users' viewing; (ii) they advertise and promote the content on the websites operating under the Subject Domain Names; and (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and  Defendants profit as a direct result of performing that content.

118.    Defendants induce, cause and/or materially contribute to the infringing activity of their users for all the reasons stated herein, including but not limited to because Defendants: (i) advertise the presence and availability Filipino content; (ii) promote the presence and

availability of Filipino content and, specifically, ABS-CBN's content, through (a) the text and content on their websites operating under the Subject Domain Names and (b) through the use of ABS-CBN's trademarks and specific identification of movies or television shows as ABS-CBN's (iii) display pirated content and organizes that content for ready access by movie or television show title; (iv) insert the links on their websites operating under the Subject Domain Names directing users where to view the content; (v) stream the pirated content to users for viewing; (vi) frequently update their inventory of pirated content, often within minutes or hours of the premier or broadcast in the Philippines, in order to tap into the known market for pirate Filipino-centric content and constantly to feed the consumers' desire for that content; (vii); enable users to copy the works; and (viii) because by promoting and providing the content, Defendants drive more traffic to their websites operating under the Subject Domain Names to increase the profits it reaps from advertising and other revenue.

119.    Defendants have the right and ability to supervise and control their websites operating under the Subject Domain Names and the users' infringing activity as set forth above. Because Defendants cause the infringed content to be loaded on their "closed websites" and be streamed on their websites operating under the Subject Domain Names, they could stop the infringement at any point.

120.    Defendants derive a financial benefit directly attributable to their users' infringement of ABS-CBN's copyrights. Popular, copyrighted works act as a draw that attracts users and advertising to the Subject Domain Names and associated websites, resulting in revenues from advertising impressions tied to page views and other sources.

121.    Defendants have taken affirmative steps to foster infringement by creating their websites operating under the Subject Domain Names and streaming the content, viewed through

video player embedded thereon, with the object of promoting the illegal viewing of ABS-CBN's copyrighted movies and television shows by presentation of the movies and television shows in association with ABS-CBN as the television network and titles associated with a telecast; and by promoting the websites and their pirated content through their websites operating under the Subject Domain Names.  *See* Exhibit 3.

122.    Defendants do not merely respond to user requests in a passive, content-neutral, and automated manner.  To the contrary, as set forth above, they control the selection and provision of the content and are the causes making that content available and accessible to their public users.  Without the active and material contributions from Defendants, the massive infringement complained of herein could not have taken place.

123.    Defendants target known demand for illegal access to and viewing of the Copyrighted Works in this District and throughout the world.

124.    Defendants are the direct and proximate cause of the harm to ABS-CBN alleged herein.

125.    The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

126.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable monetary damages to ABS-CBN and are unjustly enriching Defendants at ABS-CBN's expense.

127.    As a direct and proximate result of Defendants' infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

128.    Alternatively, ABS-CBN is entitled to the maximum statutory damages in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c), or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

129.    ABS-CBN is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

130.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

## **PRAYER FOR RELIEF**

WHEREFORE, ABS-CBN demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from advertising, promoting, performing, copying, broadcasting, performing, and/or distributing any ABS-CBN Copyrighted Works and/or content that currently exists or which exists in the future; from infringing, counterfeiting, or diluting the ABS-CBN Marks, or any mark or trade dress similar thereto, in connection with the offering of any unauthorized services, including but not limited to the advertisement, promotion, performance, copying, broadcasting, performance, and/or distribution of any ABS-CBN Copyrighted Works and/or other ABS-CBN content that currently exists or which exists in the future, from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with ABS-CBN; from

falsely representing themselves as being connected with ABS-CBN, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the public to believe any content or services of Defendants are in any way endorsed by, approved by, and/or associated with ABS-CBN; from using any reproduction, counterfeit, infringement, copy or colorable imitation of the ABS-CBN Marks in connection with the publicity, promotion, advertising, or distribution of any services by Defendants or any content by Defendants; from affixing, applying, annexing or using in connection with the promotion, distribution, or advertisement of any services or content, a false description or representation, including words or other symbols tending to falsely describe or represent  Defendants' services as being connected with ABS-CBN, or in any way endorsed by ABS-CBN; from engaging in search engine optimization strategies using colorable imitations of the ABS-CBN name or trademarks; and from otherwise unfairly competing with ABS-CBN.

B.      Entry of temporary, preliminary and permanent injunctions, enjoining Defendants from creating, maintaining, operating, joining, and participating in its World Wide Web based illegal marketplace used to copy, distribute, perform, advertise, or promote services offering pirated content, including but not limited to the Copyrighted Works, using counterfeits or infringements of the ABS-CBN Marks.

C.      Entry of an order requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to the Subject Domain Names to Plaintiffs, and, if within five (5) days of entry of such an order, Defendants fail to make such an assignment, the Court order the act be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

D.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, that upon ABS-CBN's request, the top level domain (TLD) Registries for the Subject Domain Names or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for the domain names, thus removing it from the TLD zone files which link the Subject Domain Names to the IP addresses where the associated websites are hosted.

E.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, canceling for the life of the current registration or, at ABS-CBN's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in above described infringing activities at issue, including counterfeiting of the ABS-CBN Marks at issue, to ABS-CBN's control so they may no longer be used for illegal purposes.

F.      Entry of an Order requiring Defendants to account to and pay ABS-CBN for all profits and damages resulting from Defendants' trademark counterfeiting and infringing activities and that the award to ABS-CBN be trebled, as provided for under 15 U.S.C. § 1117, or, at ABS-CBN's election with respect to Count I, that ABS-CBN be awarded statutory damages from Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and service offered, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

G.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of ABS-CBN's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H.      Entry of an Order requiring Defendants to pay ABS-CBN for all profits and damages resulting from Defendants' copyright infringement and infringing activities, together with appropriate interest thereon; that Defendants be required to account to ABS-CBN for, and disgorge to ABS-CBN, and to pay to ABS-CBN, all the gains, profits, savings and advantages

33

realized by Defendants from their acts of copyright infringement described above; or, at ABS-CBN's election with respect to Counts V and VI, that ABS-CBN be awarded statutory damages from Defendants in the amount of one hundred and fifty thousand dollars ($150,000.00) per each registered copyrighted work infringed, as provided by 17 U.S.C. § 504(c), enhanced to reflect the willful nature of Defendants' infringement, instead of an award of actual damages or profits, and be awarded its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

I.      Entry of an Order that, upon Plaintiffs' request, any advertising services, financial institutions, payment processors, banks, escrow services, money transmitters, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts, advertising revenue accounts, sub-accounts, or money transfer systems used in connection with the Subject Domain Names, or other alias domain names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution, account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

J.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

K.      Entry of an order for such other and further relief as the Court may deem proper and just.

DATED: August 11, 2020.        Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: _____*Stephen M. Gaffigan*_____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
Christine Ann Daley (Fla. Bar. No. 98482)

34

T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Christine@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Def. No. | Domain Name |
|---:|---|
| 1 | 123fullpinoymovies.com |
| 2 | 2lambingan.su |
| 3 | citizensdebate.space |
| 4 | dramasmp4hd.com |
| 5 | fantaserye.su |
| 6 | filikula.se |
| 7 | hdfullpinoymovies.xyz |
| 8 | hdpinoy.com |
| 9 | iwantpinoymovies.com |
| 10 | kipiasoft.su |
| 10 | pinoyhdlambingan.su |
| 10 | pinoysteleserye.su |
| 10 | pinoyteleseryetambayan.net |
| 10 | pinoytvreplaytambayanlambinganteleserye.su |
| 10 | pinoytvtambayanreplay.su |
| 11 | pinoyreplaytvshows.su |
| 12 | lambingantvofw.su |
| 12 | pinoylambingantvreplay.net |
| 13 | lambingantvteleserye.su |
| 13 | pinoylambinganofw.su |
| 13 | wowlambingan.net |
| 14 | lumangseries.net |
| 15 | mediatechweek.live |
| 16 | moviesnipipay.com |
| 17 | ofwpinoychannel.com |
| 17 | pinoylambingannetwork.com |
| 18 | ofwpinoytvchannel.com |
| 19 | pariwiki.ae |
| 20 | phtv.one |
| 21 | pinoybarkada.org |
| 22 | pinoybays.su |
| 23 | pinoychannel.cc |
| 24 | pinoychannelako.su |
| 25 | pinoyflixtvs.su |
| 25 | pinoystvreplay.su |

| Def. No. | Domain Name |
|---|---|
| 26 | pinoylambinganteleseryes.su |
| 27 | pinoylambinganhdreplay.net |
| 27 | pinoylambingantvreplay.su |
| 27 | pinoyslambingantvreplay.su |
| 27 | pinoysreplaytv.su |
| 27 | pinoyteleseryeako.su |
| 27 | pinoyteleseryetambayan.su |
| 27 | pinoytambayanako.su |
| 27 | pinoyteleseryechannel.su |
| 27 | pinoyteleseryereplays.su |
| 28 | pinoymovieseries.com |
| 29 | pinoymovieshub.me |
| 30 | pinoymoviess.su |
| 31 | pinoyreplaylambingan.su |
| 32 | pinoytambayana.su |
| 32 | pinoytvteleseryes.su |
| 33 | pinoyteleseryelive.com |
| 34 | pinoyteleseryetvreplays.su |
| 34 | pinoytvlambinganhd.su |
| 34 | teleseryenetwork.su |
| 35 | pinoytvreplay.ph |
| 36 | pinoytvtambayanreplay.net |
| 37 | replaypinoytv.su |
| 37 | wowpinoytvreplay.su |
| 38 | the--northface.co.uk |
| 39 | lambinganteleserye.su |
| 40 | libangan.ru |
| 41 | beyhadh.su |
| 42 | dramascool.site |
| 43 | driver1.co |
| 44 | hdfullpinoymovies.org |
| 45 | hdfulltagalogmovies.com |
| 46 | pinoystambayan.com |
| 47 | pinoyteleseryetvreplay.su |
| 48 | pinoytvembed.com |
| 49 | pinoytvrecap.com |

37

**SCHEDULE "B"**
**PLAINTIFFS' REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| THE FILIPINO CHANNEL | 1,994,383 | Aug. 20, 1996 | IC 038 – cable television broadcasting<br><br>IC 041 – television show production and programming |
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 036 – telephone calling card services<br><br>IC 038 – Television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Television broadcasting services via satellite and cable<br><br>IC 041 – Production and programming of television shows, entertainment and a variety of programming distributed over television, satellite and via a global computer network |

**SCHEDULE "C"**
**PLAINTIFFS' COMMON LAW TRADEMARK**

| Trademark |
|---|
|  |

**SCHEDULE "D"**
**PLAINTIFFS' FEDERALLY REGISTERED COPYRIGHT**

| Title of Work | Registration Number | Registration Date | Owner of Copyrighted Work | Type of Copyrighted Work |
|---|---|---|---|---|
| Barcelona: A Love Untold | PA2082515 | 5/23/2017 | ABS-CBN Film Productions, Inc. d/b/a Star Cinema | MOTION PICTURE |
| Hello, Love, Goodbye | PA0002217722 | 12/17/2019 | ABS-CBN Film Productions, Inc. d/b/a Star Cinema | MOTION PICTURE |
| The Hows of Us | PA0002192077 | 6/10/2019 | ABS-CBN Film Productions, Inc. d/b/a Star Cinema | MOTION PICTURE |
| James and Pat and Dave | PA0002231751 | 2/24/2020 | ABS-CBN Film Productions, Inc. d/b/a Star Cinema | MOTION PICTURE |
| Sin Island | PA2120607 | 4/30/2018 | ABS-CBN Film Productions, Inc. d/b/a Star Cinema | AV WORK/ MOTION PICTURE |