**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 20-61628-CIV-RUIZ

ABS-CBN CORPORATION, *et al.,*

        Plaintiffs,

vs.

123FULLPINOYMOVIES.COM, *et al.*,

        Defendants.

_____/

**PLAINTIFFS' *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY**
**RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING**
**TRANSFER OF ASSETS AND MEMORANDUM OF LAW IN SUPPORT THEREO**

        Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International Corporation (collectively, "ABS-CBN" or Plaintiffs) hereby apply, on an *ex parte* basis, for entry of a temporary restraining order and an order restraining transfer of assets, and, upon expiration, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" hereto (collectively "Defendants") pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). In support, ABS-CBN submits this Memorandum of Law.

**I.**    **INTRODUCTION**

        As alleged in ABS-CBN's Complaint, Defendants are knowingly, intentionally, and concurrently advertising, promoting, distributing, and performing ABS-CBN's copyrighted works for instant streaming, using ABS-CBN's trademarks, without authorization, through the Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), collectively creating an illegal distribution network of ABS-CBN's copyrighted content.

        Defendants' unlawful activities have caused and will continue to cause ABS-CBN irreparable injury. Among other things, Defendants have (1) deprived ABS-CBN of its right to determine the manner in which its trademarks are presented to consumers; (2) defrauded consumers into thinking Defendants' distribution services for pirated versions of ABS-CBN's copyrighted works are authorized by ABS-CBN; (3) deceived the public as to ABS-CBN's sponsorship of and/or association with Defendants' illegal distribution services and the websites

through which such content is performed, marketed, advertised, and distributed; (4) wrongfully traded and capitalized on ABS-CBN's reputation and goodwill and the commercial value of the ABS-CBN trademarks; and (5) wrongfully damaged ABS-CBN's ability to market its content and services and educate consumers about its brand via the Internet in a free and fair marketplace. Defendants should not be permitted to continue their unlawful activities, which are causing ABS-CBN ongoing irreparable harm.

Moreover, Defendants are participating in the creation and/or maintenance of an illegal marketplace on the World Wide Web, the purposes of which are to (i) confuse consumers regarding the source of their content for profit and (ii) expand the marketplace for illegal distribution services of pirated ABS-CBN content while shrinking the legitimate marketplace for ABS-CBN's authorized distribution services. The natural and intended byproduct of Defendants' actions is the erosion of the overall legitimate marketplace in which ABS-CBN operates and the goodwill associated with the ABS-CBN name, marks, and content. Accordingly, ABS-CBN is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of ABS-CBN's intellectual property.

Further, Defendants monetize their illegal operations through the use of ad revenue services which pay Defendants for webpage visits, including, but not limited to, the advertising services identified on Schedule "B" hereto. (See Declaration of Christine Ann Daley in Support of Plaintiffs' Application for Temporary Restraining Order ["Daley Decl."] ¶ 5, filed herewith, and Comp. Ex. 1 thereto.) In light of the inherently deceptive nature of Defendants' illegal activities, ABS-CBN has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. As provided by the Lanham Act and the Copyright Act, Plaintiffs are entitled to recover the illegal profits gained through Defendants' unlawful distribution services under Plaintiffs' Marks (See 15 USC 1117(a)) and infringement of Plaintiffs' copyrighted works (See 17 U.S.C. §504(a)(b)). To preserve that disgorgement remedy, ABS-CBN seeks an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through the Defendants' advertising accounts.

## II.   STATEMENT OF FACTS

### A.   ABS-CBN's Rights.

ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies identified in Ex. 2 to the Complaint [ECF No. 1-3]. ABS-CBN Corporation is the owner

of the unregistered copyrights in and to the TV shows identified in Ex. 3 and paragraph 26 of the Complaint [ECF No. 1-4]. Together, these works are referred to herein collectively as the "Copyrighted Works." Plaintiffs all share exclusive rights in and to the ABS-CBN Copyrighted Works. All of ABS-CBN's Copyrighted Works are produced and initially aired through its broadcast facilities in the Republic of the Philippines ("the Philippines"). (See Declaration of Elisha J. Lawrence in Support of Plaintiffs' Application for Temporary Restraining Order ["Lawrence Decl."] ¶ 8, filed herewith.) Simultaneous with, or after, that original broadcast, ABS-CBN's content is distributed worldwide via paid subscriptions, including through cable companies' premium channels and telecom provider partnerships, and directly by ABS-CBN through Internet, cable, and satellite services. (Id. at ¶¶ 8, 10).

ABS-CBN International is the owner of all rights in and to the federally registered trademarks (the "ABS-CBN Registered Trademarks") listed in Paragraph 5 and the common law trademark (the "ABS-CBN Common Law Trademark") listed in paragraph 6 of the Declaration of Elisha J. Lawrence (collectively, the "ABS-CBN Marks") which are used in connection with content distribution services of high quality television programing. (Lawrence Decl. ¶¶ 4-7; see also United States Trademark Registrations for the ABS-CBN Marks at issue [the "ABS-CBN Trademark Registrations"], attached as Ex. 1 to the Complaint, ECF No. [1-2], incorporated herein by reference.) The ABS-CBN Marks are symbols of ABS-CBN's quality, reputation, and goodwill and have never been abandoned. (See Lawrence Decl. ¶ 9.) Moreover, ABS-CBN has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. (Id. at ¶¶ 7-11.)

ABS-CBN has extensively used, advertised, and promoted the ABS-CBN Marks in the United States in association with quality television programming, movies, and content distribution services, and has carefully monitored and policed the use of the ABS-CBN Marks. (Lawrence Decl. ¶¶ 7-11.) As a result of ABS-CBN's efforts, the ABS-CBN Marks have acquired fame in the consumer market. (Id.) The ABS-CBN Marks are among the most widely recognized trademarks in the Filipino consumer communities in the United States and the Philippines, and the trademarks have achieved secondary meaning. (Id.) The ABS-CBN Marks have come to symbolize the enormous goodwill of genuine ABS-CBN distribution services throughout the United States. (Id.) At all times relevant, Defendants have been aware of ABS-CBN's ownership of the ABS-CBN Marks, exclusive rights to use and license such Marks, and

substantial goodwill embodied in and favorable recognition for, the ABS-CBN Marks.

**B.      Defendants Wrongfully Reproduce, Disseminate and Perform ABS-CBN's Copyrighted Works.**

Defendants, via, at least, the Subject Domain Names, are currently infringing many of ABS-CBN's Copyrighted Works. Defendants provide links to performances of the Copyrighted Works on their websites operating under the Subject Domain Names.[1] (*See* Ex. 3 to the Complaint, ECF No. [1-4].) If a user clicks on a link to one of ABS-CBN's copyrighted TV shows or movies, the Defendants' websites stream and perform the full-length version of the content. (See Ex. 3 to the Complaint, ECF No. [1-4].) This includes, but is not limited to, the ABS-CBN Copyrighted Works identified in Exs. 2 and 3 to the Complaint and paragraph 26 thereto, ECF Nos. [1-3] and [1-4]. Defendants stream the content which is performed through a viewer/player window within the websites themselves. It is believed that the Copyrighted Works are not provided by the websites' various users because Defendants' websites all appear to be closed and do not permit users to alter the content. (See Daley Decl. ¶ 2.)

ABS-CBN reasonably believes Defendants profit from the advertising revenue derived by driving users to the websites operating under the Subject Domain Names in order to access and view the pirated copies of ABS-CBN's Copyrighted Works. (Lawrence Decl. ¶¶ 16-19; Daley Decl. ¶ 4.) The large inventory of popular entertainment content available on Defendants' websites, including full-length copies of daily programming and archived shows – all available at the click of a button and often made available very soon after the original broadcast, is designed to attract users to the infringing content and, thus, increase Defendants' profits from the advertisers who pay Defendants based on the number of views that the advertising receives. (Daley Decl. ¶ 4; Lawrence Decl. ¶¶ 16-19.) By performing the Copyrighted Works, and encouraging, facilitating, and assisting in the viewing and copying of such works, ABS-CBN believes the Defendants' websites collectively attract many thousands of page views each day. (See Lawrence Decl. ¶¶ 16-

---

[1] Several of the Defendants use at least one of their Subject Domain Names to act as a supporting domain name to direct traffic to websites operating under other Subject Domain Names, from which users may view the Copyrighted Works. Accordingly, the web pages for the supporting domain names are included with the web pages to which those sites redirect. (See Exhibit 3 to the Complaint; see also Daley Decl. ¶ 2 n. 1; Lawrence Decl. ¶ 13 n. 1.) Additionally, Defendant Number 43 uses the domain name "mobinews.info" to frame advertisements on its "driver1.co" domain name. This is believed to be done to avoid violating the terms and services agreement of its advertising companies for infringing Plaintiffs' and others' trademarks and copyrights. (See also Daley Decl. ¶ 5 n. 2 and Ex. 1 thereto; Lawrence Decl. ¶ 13 n. 1.)

19.) The infringement-driven traffic increases the volume of online advertising impressions and transactions, and thereby increases revenues from the advertising services the Defendants use, and enables Defendants to charge advertisers higher rates. (Daley Decl. ¶ 4; Lawrence Decl. ¶¶ 16-19.)

Defendants have full knowledge of ABS-CBN's rights and their infringement thereof given their willful and blatant distribution, copying, performing, and streaming of ABS-CBN's content; their active inducement of infringement, the advertisement of the content, and the profits they reap as a direct result of performing ABS-CBN's Copyrighted Works under the ABS-CBN trademarks.

Because Defendants' infringement is systematic, calculated, ongoing, and because ABS-CBN has no recourse but to apply to this Court for relief, injunctive relief is necessary to prevent Defendants from infringing ABS-CBN's Copyrighted Works through the current Subject Domain Names, as well as by simply registering new domain names and/or simply hopping to another service provider and recommencing their infringement.

## C.  Defendants Wrongfully Use ABS-CBN's Trademarks in Connection With the Promotion and Advertisement of Counterfeit Services.

Defendants do not have, nor have they ever had, the right or authority to use the ABS-CBN Marks for any purpose. (See Lawrence Decl. ¶¶ 12, 14.) Despite their known lack of authority to do so, Defendants are distributing and performing ABS-CBN Copyrighted Works via their illegal distribution services under counterfeit and infringing trademarks which are substantially indistinguishable from the ABS-CBN Marks ("Defendants' Services") which cause, and will continue to cause, ABS-CBN irreparable injury. (See Lawrence Decl. ¶¶ 12, 14-15; Daley Decl. ¶¶ 2-4; see also relevant captures from Defendants' Internet websites operating under the Subject Domain Names using the ABS-CBN trademarks ["Defendants' Websites"] attached as Ex. 3 to the Complaint, ECF No. [1-4].)

As part of its ongoing investigation regarding the infringement of its intellectual property, on behalf of ABS-CBN, Stephen M. Gaffigan, P.A. performed an investigation into the advertising accounts used by Defendants. (Daley Decl. ¶ 5.) By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names, Stephen M. Gaffigan, P.A. was able to specifically locate and identify many of the advertising revenue accounts of the Defendants as identified on Schedule "B" hereto.[2] (Id. and Comp. Ex. 1

---

[2] Additionally, included on Schedule "B" are Defendants' known associated e-mail addresses as identified in the WHOIS records and directly on the websites operating under the Subject Domain Names. See Daley Decl. ¶ 3.

thereto.) These accounts are used by Defendants in relation to the advertising networks set up to generate income on their websites operating under the Subject Domain Names. (Id.)

ABS-CBN's representative, Elisha Lawrence, reviewed and visually inspected Defendants' Websites, and determined the distribution services offered were unauthorized distribution services performing pirated copies of ABS-CBN's Copyrighted Works and using the ABS-CBN Marks without permission to do so. (See Lawrence Decl. ¶¶ 13-15 and Exs. 1 and 3 of the Complaint, ECF Nos. [1-2] and [1-4], ABS-CBN's registered trademarks and examples of Defendants' infringement of the ABS-CBN Marks.) Moreover, Ms. Lawrence reviewed ABS-CBN's contracts and confirmed that Defendants are not and never were entitled to broadcast or otherwise distribute the ABS-CBN Copyrighted Works offered or use the ABS-CBN Marks to distribute such content. (Id.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks that are slightly modified from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1, 2 (S.D. Fla. 1983). A comparison of the ABS-CBN Marks to the marks used by Defendants in connection with the promotion and distribution of Defendants' Services reveals the obvious counterfeit and infringing nature of Defendants' Services. (Compare ABS-CBN's Trademark Registrations, ECF No. [1-2] with Defendants' Websites, ECF No. [1-4].) Defendants' Services offered under counterfeits of the ABS-CBN Marks are being promoted, offered for distribution, and distributed by Defendants to consumers within this district. (See Lawrence Decl. ¶¶ 12-15; Daley Decl. ¶¶ 2-4; see also Defendants' Websites, ECF No. [1-4].)

Defendants are falsely representing to consumers that their content distribution services are genuine, endorsed, and/or authorized by ABS-CBN. Defendants' Internet websites are nothing more than illegal operations, infringing on the intellectual property rights of ABS-CBN and others. The Subject Domain Names are used as the common names of Defendants and are a substantial part of the means by which Defendants further their scheme, causing harm to ABS-CBN.

Genuine ABS-CBN authorized distribution services are widely legitimately advertised, promoted, offered for sale, and discussed by ABS-CBN, its partners, and unrelated third parties via the Internet. (See Lawrence Decl. ¶ 17-18.) Over the course of the past seven years, visibility

on the World Wide Web, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to ABS-CBN's overall marketing and consumer education efforts. (See id. at ¶ 18.) Thus, ABS-CBN expends significant monetary resources on Internet marketing and consumer education regarding its content and services, which allow ABS-CBN and others to fairly educate consumers about the value associated with the ABS-CBN brand and the content and services thereunder. (Id.)

## III.   ARGUMENT

### A.   A Temporary Restraining Order is Essential to Prevent Immediate Injury.

ABS-CBN is seeking entry of a temporary restraining order (i) prohibiting Defendants' further wrongful use of ABS-CBN's trademarks and (ii) disabling Defendants' websites operating under the Subject Domain Names during the pendency of this action. The requested relief is necessary to immediately stop Defendants' ongoing, intentional confusion of consumers and the associated irreparable harm occurring to ABS-CBN.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where it clearly appears from the specific facts shown by affidavit ". . . that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Moreover, temporary restraining orders are available on an *ex parte* basis if the movant shows through an affidavit that there is a threat of intervening immediate, irreparable harm before the adverse party may be heard in opposition and the movant's attorney certifies in writing why notice should not be required. Fed. R. Civ. P. 65(b). (See Daley Decl. ¶¶ 7-10 and Comp. Ex. 2 thereto, examples of website redirections.) As demonstrated herein, such irreparable and immediate injury will result to ABS-CBN if Defendants' wrongful activities are not immediately stopped by the issuance of a temporary restraining order.

Defendants herein fraudulently promote and advertise ABS-CBN's Copyrighted Works and distribute and perform such works using counterfeits and infringements of the ABS-CBN Marks via the websites operating under the Subject Domain Names. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and ABS-CBN. Specifically, Defendants are wrongfully using counterfeits and infringements of the ABS-CBN Marks to promote and attract customers to their websites operating under the Subject Domain Names and to expand their illegal distribution service network. The entry of a temporary

restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the ABS-CBN Marks and would preserve the status quo until such time as a hearing can be held. Thus, a temporary restraining order is appropriate. See Dell Inc. v. BelgiumDomains, LLC, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the Internet websites at issue herein are under Defendants' complete control. Thus, Defendants have the ability to modify domain registration and content, change payment accounts, redirect consumer traffic to other websites, and transfer assets and the registrations for many of the domain names. (See Daley Decl. ¶¶ 7-9.) Also, Defendants can easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiffs' Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo. (Id.) Furthermore, ABS-CBN's counsel has learned through multiple prior cases that, upon notice of a lawsuit, counterfeit website owners typically immediately set up a redirect which essentially informs a search engine that the website being crawled has permanently moved to another domain and instructs the search engine to divert traffic to the other website. (See id. at ¶¶ 7-9.) In the present case, Defendants could use the redirect to push new traffic from the domain names they control at issue to new domains not yet identified in the Complaint. (Id.) The result would be to slingshot the new domains to the top of the search engine results pages by leveraging the current Internet traffic to the domains in suit which was built through the illegal use of ABS-CBN's intellectual property. (See id. at ¶ 9.) Defendants would completely erase the status quo by transferring all of the benefits of their illegal activities to new websites. (See id. at ¶¶ 7-10 and Comp. Ex. 3 thereto.) As Defendants engage in illegal infringing activities, ABS-CBN has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark or copyright law. (See id. at ¶ 7.)

Federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Time Warner Enter.

Co. v. Does #1-2, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994) (compiling cases and noting, "[w]here plaintiffs have shown that a danger exists of destroying or transferring infringing goods, courts in this Circuit have not hesitated to grant *ex parte* orders under either the Lanham Act or the Copyright Act."); MPL Communications Limited v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-61418-RAR (S.D. Fla. July 17, 2020) (Order granting *Ex Parte* Application for Temporary Restraining Order and restraining defendants' assets and defendants' related assets); ABS-CBN Corporation v. abscbnpinoy.com, Case No. 19-cv-629693-BB (Oct. 31, 2019, entered on docket Nov. 1, 2019) (same). This Court should prevent an injustice from occurring by issuing a temporary restraining order which precludes Defendants from continuing to display infringing content via the websites operating under the Subject Domain Names and which, after allowing an opportunity for objections, temporarily places control of the websites at issue in the hands of the Court. Only such an order will prevent ongoing irreparable harm and maintain the status quo.

**B.      Standard for Temporary Restraining Order and Preliminary Injunction.**

In this Circuit, the standards for obtaining a temporary restraining order and a preliminary injunction are the same. See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction). ABS-CBN's evidence establishes all of the relevant factors. Accordingly, preliminary injunctive relief is appropriate.

**1.      Probability of Success on the Merits of ABS-CBN's Claims.**

**(a)      Likelihood of Success on Counterfeiting and Infringement Claim.**

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake,

or to deceive." ABS-CBN must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without ABS-CBN's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Services. See 15 U.S.C. § 1114(1). ABS-CBN's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of ABS-CBN's trademark counterfeiting and infringement claims are easily met. The ABS-CBN Registered Marks are owned by ABS-CBN and registered on the Principal Register of the United States Patent and Trademark Office. (See Lawrence Decl. ¶ 5; see also ABS-CBN's Trademark Registrations, ECF No. [1-2].) Moreover, Defendants have never had the right or authority to use the ABS-CBN Marks. (See Lawrence Decl. ¶¶ 12, 14.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the services; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See Safeway Store, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997). The factors listed are weighed and balanced and no single factor is dispositive. (Id.)

**(1)     Strength of the Marks.**

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 362 (11th Cir. 1997). The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (Id.) It cannot be seriously disputed that the ABS-CBN Marks are strong, arbitrary, and fanciful marks. (See Lawrence Decl. ¶¶ 5, 6; see also ABS-CBN's Trademark Registrations, ECF No. [1-2].)

The ABS-CBN Marks have also acquired secondary meaning. ABS-CBN has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the ABS-CBN Marks. (See Lawrence Decl. ¶¶ 7-11.) The ABS-CBN Marks enjoy widespread recognition and are

prominent in the minds of consumers. Indeed, the ABS-CBN Marks are among the most widely recognized trademarks by the Filipino community in the United States. (See id. at ¶¶ 7-9.)

### (2)     Similarity of the Marks.

Likelihood of confusion is greater when an infringer uses the exact trademark. Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Defendants are using marks that are identical to the ABS-CBN Marks. (Compare ABS-CBN's Trademark Registrations, ECF No. [1-2] with Defendants' Websites, ECF No. [1-4].)

### (3)     Similarity of the Services.

"The greater the similarity between the products and services, the greater the likelihood of confusion." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983). Defendants are offering the same types of services ABS-CBN distributes and offers. (See Lawrence Decl. ¶¶ 4, 5, 6, 9-15; see generally Defendants' Websites, ECF No. [1-4].) Because they bear counterfeits of the ABS-CBN Marks, Defendants' Services appear virtually identical to ABS-CBN's genuine and authorized services in the consumer market. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983).

### (4)     Similarity of Distribution and (5) Advertising Method.

Convergent marketing channels increase the likelihood of confusion. See Turner Greenberg Assocs., 320 F. Supp. 2d at 1332. Both ABS-CBN and Defendants advertise and distribute their services using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (Lawrence Decl. ¶¶ 4-15, 17-24; see generally Defendants' Websites attached as Ex. 3 to the Complaint, ECF No. [1-4].) Moreover, both target the same general U.S. based Filipino customers, and as such, ABS-CBN is directly competing with Defendants' distribution services and illegal distribution network. Moreover, Defendants use at least one of the same methods of distribution, i.e., instant Internet streaming, as ABS-CBN.

### (6)     Defendants' Intent.

In this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity." Turner Greenberg Assocs., 320 F. Supp. 2d at 1333, citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d

1261, 1268 (S.D. Fla. 1999). With clear-cut copying, it is appropriate to infer Defendants intend to benefit from ABS-CBN's reputation, to ABS-CBN's detriment. See Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Florida, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

**(7)      Evidence of Actual Confusion.**

Actual confusion is unnecessary to establish infringement, since, the test is likelihood of confusion. See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, promoting, and offering distribution services which are identical in nature to those services offered, sold, and authorized by ABS-CBN. (See Lawrence Decl. ¶¶ 12-15; see Ex. 1 to the Complaint, ECF No. [1-2]; see generally Defendants' Websites attached as Ex. 3 to the Complaint, ECF No. [1-4].)

The above seven factors weigh in ABS-CBN's favor, and ABS-CBN has therefore shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

> **(c)      Likelihood of Success on Plaintiffs' Other Claims: False Designation of Origin, Common Law Unfair Competition, Common Law Trademark Infringement, Direct Infringement of Copyright, and Contributory Infringement of Copyright.**

As ABS-CBN has shown a substantial likelihood of success on its federal trademark infringement and counterfeiting claim, ABS-CBN respectfully submits it has satisfied the requirements for the issuance of a Temporary Restraining Order. Nevertheless, ABS-CBN submits that it has a likelihood of success as to its other claims. As illustrated in detail *supra*, the public is likely to be deceived and/or confused by the similarity of the ABS-CBN Marks and Defendants' use thereof, thus, ABS-CBN has shown a likelihood of success on its false designation of origin claim. Since ABS-CBN has established that there is a likelihood of confusion regarding Defendants' use of its Marks, ABS-CBN is also likely to succeed on its common law unfair competition and trademark infringement claims. See Rolex Watch U.S.A., Inc. v. Forrester, No. 83-8381-Civ, 1986 WL 15668, at *3-5 (S.D. Fla. Dec. 9, 1986); PetMed Express, Inc. v. MedPets.com, Inc., 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

As to the direct infringement of copyright claim, Defendants' ongoing copying, dissemination and performance of ABS-CBN's Copyrighted Works by facilitating access to and instantly streaming pirated copies of ABS-CBN's Copyrighted Works for users through their websites, directly infringes ABS-CBN's exclusive rights under the Copyright Act, 17 U.S.C. §§

12

106(1), (3) and (4). (See Daley Decl. ¶ 2.) Finally, as to the claim of contributory infringement of copyright, Defendants' users directly infringe ABS-CBN's copyrights; Defendants have knowledge of their infringement since they provide and perform the content and do so solely for the purpose of their users' viewing; Defendants intentionally cause and materially contribute to their users' infringement for all the reasons stated herein, including providing the infringing content for using and promoting such content through their websites. (See Daley Decl. ¶ 2.) Tiffany (NJ), LLC v. Dongping, No. 10-61214-CIV, 2010 WL 4460451 (S.D. Fla. Oct. 29, 2010) (citing MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764 (2005)).

### 2.    Plaintiffs are Suffering Irreparable Injury

[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities. Id. A likelihood of confusion exists herein because Defendants have engaged in counterfeiting activities using spurious designations indistinguishable from the ABS-CBN Marks.

Additionally, harm in copyright cases might be "irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." Salinger v. Colting, 607 F.3d 68, 81 (2d Cir. 2010); see WPIX, Inc. v. ivi, Inc., 765 F. Supp. 2d 594, 617-621 (S.D.N.Y. 2011) (granting injunction based on streaming over Internet of copyrighted TV programming).

ABS-CBN suffers financial harm from Defendants' streaming of the Copyrighted Works, which undermines the value of that content and the ability of ABS-CBN to profit from its investment, harm from the loss of control over its programming, harm from diversion of their customers from its subscription services, and harm from decreases in value of its negotiated contracts, among other harms. (Lawrence Decl. ¶¶ 19-24.) These harms are notoriously difficult to quantify, and accordingly are considered irreparable. (Lawrence Decl. ¶ 22); see, e.g., Salinger, 607 F.3d at 82 (loss of sales due to infringement is "notoriously difficult" to prove); WPIX, 765 F. Supp. 2d at 620 (finding "taking away" indeterminate profits and number of "viewers … which compensate or otherwise obtain permission from plaintiffs for the use of their

works" are "unquantifiable" harms, they are "irreparable.").

Moreover, because Defendants' infringing conduct divests ABS-CBN of control over its content and of its exclusive copyrights, it is irreparable. See Salinger, 607 F.3d at 82 (noting how violation of copyright owner's "right to exclude" renders monetary remedies inadequate in a wide range of circumstances) (quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 395 (2006); see also Bait Prods. Pty Ltd. v. Murray, 2013 U.S. Dist. LEXIS 120170, at *12 (M.D. Fla. Aug. 23, 2013) (holding "due to the possibility of future infringement of the motion picture …, monetary damages alone are inadequate to compensate Bait Productions for any injury it has sustained or will potentially sustain in the future.").

### 3.     The Balance of Hardship Tips Sharply in ABS-CBN's Favor.

ABS-CBN has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the ABS-CBN Marks and the ABS-CBN Copyrighted Works. (Lawrence Decl. ¶¶ 7-11.) Should Defendants be permitted to continue their unlawful activities, ABS-CBN will suffer substantial losses and damage to its reputation. (See id. at ¶¶ 11, 22-24.) ABS-CBN is suffering irreparable harm while "[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." WPIX, 765 F. Supp. 2d at 603; see, e.g., EyePartner, Inc. v. Kor Media Group LLC, 2013 U.S. Dist. LEXIS 98370, at *16 (and cases cited therein). Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present infringing activities.

### 4.     The Relief Sought Serves the Public Interest.

Defendants are engaged in unlawful activities and are directly defrauding the consuming public by palming off Defendants' services as ABS-CBN's genuine and authorized services. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked services or products. See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla.1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

The public interest is protected by issuing an injunction because ABS-CBN loses valuable incentives to continue to create programming if it continues to be deprived of (1) control over its content, (2) how and where the content gets distributed, including Internet retransmissions through negotiated licenses and its portals, and (3) potential revenue sources.

Protecting Plaintiffs' copyrights is consistent with, if not equivalent to, promoting the public interest. See Salinger, 607 F.3d at 82; WPIX, 765 F. Supp. 2d at 621; CBS Broad., Inc. v. EchoStar Communs. Corp., 265 F.3d 1193, 1198 (11th Cir. 2001) ("the public interest lies with protecting the rights of copyright owners."); C.B. Fleet Co. v. Unico Holdings, Inc., 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works.").

### C. The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a). Moreover, ABS-CBN's Copyrighted Works are currently being infringed and will continue to be infringed absent injunctive relief against Defendants pursuant to 17 U.S.C. § 502.

### 1. Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of ABS-CBN's Intellectual Property is Appropriate.

ABS-CBN requests an order requiring Defendants to immediately cease all use of the ABS-CBN Marks, or substantially similar marks, and Copyrighted Works including on or in connection with all Internet websites and domain names owned, operated, or controlled by them. Such relief is necessary to stop the ongoing harm to ABS-CBN's trademarks and goodwill and to prevent Defendants from continuing to benefit from the increased traffic to their illegal distribution network created by their unlawful use of ABS-CBN's intellectual property. This Court and others have authorized immediate injunctive relief in cases involving the unauthorized use of trademarks and copyrights.[3]

---

[3] See MPL Communications Limited v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-61418-RAR (S.D. Fla. July 17, 2020) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order); adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-61146-RAR (S.D. Fla. June 16, 2020) (same); Apple Corps Limited v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-60587-RAR (S.D. Fla. Mar. 24, 2020) (same); Chanel, Inc. v. 7creplicachanel.com, Case No. 20-cv-60309-RAR (S.D. Fla. Feb. 19, 2020) (same); Louis Vuitton Malletier v. lv2014.skrar, Case No. 19-cv-61015-RAR (S.D. Fla. June 14, 2019) (same); Fendi S.R.L. v. joe bag, Case No. 19-cv-61356-RAR (S.D. Fla. June 4, 2019) (same); adidas AG v. global online shopping, Case No. 19-cv-61180-RAR (S.D. Fla. May 29, 2019) (same); Abercrombie & Fitch Trading Co. v. artemis gesdy, Case No. 19-cv-60287-RAR (S.D. Fla. May 16, 2019) (same). See also ABS-CBN Corporation v. abscbnpinoy.com, Case No. 19-cv-629693-BB (Oct. 31, 2019, entered on docket Nov. 1, 2019) (same); Mycoskie, LLC v. Individuals, P'ships

## 2.      Entry of an Order Prohibiting Transfer of the Subject Domain Names During the Pendency of this Action is Appropriate.

To preserve the status quo, ABS-CBN seeks an order temporarily modifying control of and prohibiting Defendants from transferring the Subject Domain Names being used and controlled by them to other parties. Under the operating rules of domain name registrars, defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff. (See Daley Decl. ¶¶ 9-11.) Moreover, defendants can and often do modify website content to thwart discovery and redirect traffic to thwart effective injunctive relief. (Id.) Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in intellectual property cases involving domain names regularly grant such relief.[4] Here, an interim order prohibiting Defendants from transferring their Subject Domain Names poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford ABS-CBN full relief.

## 3.      Entry of an Order Modifying Control, Redirecting, and Disabling the Subject Domain Names is Appropriate.

An interim order redirecting, transferring, disabling, or canceling the offending domain names is the only means of affording a plaintiff interim relief that avoids irreparable harm. Accordingly, in order to disable and redirect the Subject Domain Names, ABS-CBN requests the Court enter an order requiring the registrars and the registries that maintain the Top Level Domain ("TLD") Zone files for the Subject Domain Names change the registrar of record for the Subject Domain Names to a holding account with a Registrar of ABS-CBN's choosing, where they will be held in trust for the Court enter an order requiring the registrars and the registries that maintain the Top Level Domain ("TLD") Zone files for the Subject Domain Names change the registrar of

---

& Unincorporated Ass'ns Identified on Schedule "A", No. 19-60518-CIV-BLOOM, 2019 U.S. Dist. LEXIS 79803 (S.D. Fla. Mar. 1, 2019) (same).

[4] See Chanel, Inc. v. 7Creplicachanel.com, Case No. 20-cv-60309-RAR (S.D. Fla. Feb. 19, 2020) (prohibiting Defendants from transferring domain names during pendency or until further Order of the Court); Goyard St-Honore v. goyard.org.uk, Case No. 19-cv-62926-RAR (S.D. Fla. Nov. 26, 2019) (same); Louis Vuitton Malletier v. aaalvshop.com, Case No. 19-cv-61986-RAR (S.D. Fla. Aug. 12, 2019) (same); adidas AG v. adidascitycup.com, Case No. 19-cv-61353-RAR (S.D. Fla. June 21, 2019) (same). See also ABS-CBN Corporation v. abscbnpinoy.com, Case No. 19-cv-629693-BB (Oct. 31, 2019, entered on docket Nov. 1, 2019) (same); adidas AG v. 1jerseys.com, No. 18-63164-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 43046 (S.D. Fla. Jan. 2, 2019) (same); Abercrombie & Fitch Trading Co. v. abercrombiesirelands.com, No. 17-61810-CIV-SCOLA, 2017 U.S. Dist. LEXIS 154730 (S.D. Fla. Sep. 20, 2017) (same).

record for the Subject Domain Names to a holding account with a Registrar of ABS-CBN's choosing, where they will be held in trust for the Court during the pendency of this action and set to automatically redirect to ABS-CBN's designated website appearing at the URL http://servingnotice.com/Bg9mr3/index.html.[5] Upon such redirection, a copy of all of the pleadings, other documents, and Court orders issued in this matter will be immediately visible to Defendants the moment they type any of their own domain names into their web browsers. The Subject Domain Names would serve as the single most effective means of notifying Defendants of the pendency of this action and the relief sought by ABS-CBN and affording them and any other interested parties with an opportunity to present objections.

### 4.      An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. ABS-CBN has demonstrated above that it will likely succeed on the merits of its claims. As such, under 15 U.S.C. § 1117 and 17 U.S.C. §504, ABS-CBN will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their illegal schemes. Due to the deceptive nature of the counterfeiting and piracy businesses and Defendants' deliberate violations of federal trademark and copyright laws, ABS-CBN respectfully requests this Court grant additional *ex parte* relief restraining the transfer of all monies held or received by Defendants' advertising services as identified on Schedule "B" hereto, or other advertising services or financial institutions for the benefit of any one or more of the Defendants. See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc., 80 F.3d 749 (2d Cir. 1996); see also SEC v. ETS Payphones, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

---

[5] Such relief regarding a change of registrars was granted by this Court in Chanel, Inc. v. 7Creplicachanel.com, Case No. 20-cv-60309-RAR (S.D. Fla. Feb. 19, 2020); Goyard St-Honore v. goyard.org.uk, Case No. 19-cv-62926-RAR (S.D. Fla. Nov. 26, 2019), Louis Vuitton Malletier v. aaalvshop.com, Case No. 19-cv-61986-RAR (S.D. Fla. Aug. 12, 2019), and adidas AG v. adidascitycup.com, Case No. 19-cv-61353-RAR (S.D. Fla. June 21, 2019); and by other Courts in ABS-CBN Corporation v. abscbnpinoy.com, Case No. 19-cv-629693-BB (S.D. Fla. Oct. 31, 2019, entered on docket Nov. 1, 2019); adidas AG v. 1jerseys.com, No. 18-63164-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 43046 (S.D. Fla. Jan. 2, 2019); Abercrombie & Fitch Trading Co. v. abercrombiesirelands.com, No. 17-61810-CIV-SCOLA, 2017 U.S. Dist. LEXIS 154730 (S.D. Fla. Sep. 20, 2017); Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com, No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181451 (S.D. Fla. Dec. 7, 2015).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets *pendente lite.* See Mason Tenders Dist. Council Pension Fund v. Messera, 1997 WL 223077 (S.D.N.Y. May 7, 1997) ("[a]lmost all the Circuit Courts have held Rule 65 is available to freeze assets *pendente lite* under some set of circumstances").

In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving counterfeiting defendants. See, e.g. Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d 982 (11th Cir. 1995); Reebok Int'l Ltd. v. Marnatech Enter., 737 F. Supp. 1521 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992). In Levi Strauss, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. Levi Strauss, 51 F.3d at 987. Distinguishing Levi Strauss from two earlier cases not involving Lanham Act claims, the Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Id. citing Federal Trade Commission v. United States Oil and Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir. 1984) (district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible). Indeed, courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested. See S. E. C. v. Lauer, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); Kemp v. Peterson, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically

traced to illegal activity). In cases in this district substantially similar to this matter, this Court and others have entered the precise relief sought herein.[6]

Similarly, in Reebok v. Marnatech, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. Reebok Int'l Ltd., 737 F. Supp. at 559. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. Reebok Int'l Ltd., 970 F.2d 552, 563 (9th Cir. 1992). The Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [Defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [Defendant's] assets in order to ensure the availability of that final relief." Reebok Int'l Ltd., 970 F.2d. at 559; see also Republic of Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their

---

[6] See e.g., MPL Communications Limited v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-61418-RAR (S.D. Fla. July 17, 2020) (Order granting TRO, requiring financial institutions to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy plaintiff's requested relief); adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-61146-RAR (S.D. Fla. June 16, 2020) (same); Apple Corps Limited v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-60587-RAR (S.D. Fla. Mar. 24, 2020) (same); Louis Vuitton Malletier v. lv2014.skrar, Case No. 19-cv-61015-RAR (S.D. Fla. June 14, 2019) (same); Fendi S.R.L. v. joe bag, Case No. 19-cv-61356-RAR (S.D. Fla. June 4, 2019) (same); adidas AG v. global online shopping, Case No. 19-cv-61180-RAR (S.D. Fla. May 29, 2019) (same); Abercrombie & Fitch Trading Co. v. artemis gesdy, Case No. 19-cv-60287-RAR (S.D. Fla. May 16, 2019) (same). See also ABS-CBN Corporation v. abscbnpinoy.com, Case No. 19-cv-629693-BB (S.D. Fla. Oct. 31, 2019, entered on docket Nov. 1, 2019) (TRO restraining funds held or received by certain advertising services to preserve assets to satisfy Plaintiffs' requested relief); ABS-CBN Corporation v. tfctvlive.com, Case No. 19-cv-61923-RS (S.D. Fla. Aug. 9, 2019, entered on docket Aug. 12, 2109) (same); ABS-CBN Corporation v. cinesilip.su, Case No. 18-cv-62942-WPD (S.D. Fla. Dec. 6, 2018, entered on docket Dec. 7, 2018) (same); ABS-CBN Corporation v. Aceshowbiz.me, Case No. 18-cv-61553-DPG (S.D. Fla. July 12, 2018) (same); ABS-CBN Corporation v. Angprobinsyano1.com, Case No. 18-cv-60403-KMM (S.D. Fla. July 3, 2018) (same); ABS-CBN Corp. v. abscbn-teleserye.com, Case No. 17-cv-61051-CMA (S.D. Fla. June 2, 2017) (same).

assets under trademark infringement claims. See e.g., Levi Strauss, 51 F.3d at 987; Reebok Int'l Ltd., 970 F.2d at 559. Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*. See F.T. Int'l Ltd v. Mason, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); CSC Holdings, Inc. v. Greenleaf Elec., Inc., 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

Defendants' blatant violations of federal intellectual property laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. As Defendants' businesses are conducted anonymously over the Internet, ABS-CBN has additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or ABS-CBN's knowledge.

### D.      A Bond Should Secure the Injunctive Relief.

Because of the strong and unequivocal nature of ABS-CBN's evidence of counterfeiting and infringement, false designation of origin, unfair competition, and direct and secondary infringement of copyright, ABS-CBN respectfully requests this Court require it to post a bond of ten thousand dollars ($10,000.00) in Defendants' favor. The amount of posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV.    CONCLUSION

In view of the foregoing, Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International Corporation, respectfully request this Court grant their *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on ABS-CBN's Motion for Preliminary Injunction before the expiration of the temporary restraining order.  Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Plaintiffs respectfully request the Court provide a copy of any temporary restraining order via e-mail to Plaintiffs' counsel at christine@smgpa.net so that Plaintiffs may immediately effectuate any relief ordered therein and provide Defendants with proper notice of the order and any subsequent hearing.

DATED: August 12, 2020.         Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Christine Ann Daley**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
Christine Ann Daley (Fla. Bar No. 98482)
Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: stephen@smgpa.net
E-mail: leo@smgpa.net
E-mail: Christine@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

SCHEDULE "A"
DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Def. No. | Domain Name |
|---|---|
| 1 | 123fullpinoymovies.com |
| 2 | 2lambingan.su |
| 3 | citizensdebate.space |
| 4 | dramasmp4hd.com |
| 5 | fantaserye.su |
| 6 | filikula.se |
| 7 | hdfullpinoymovies.xyz |
| 8 | hdpinoy.com |
| 9 | iwantpinoymovies.com |
| 10 | kipiasoft.su |
| 10 | pinoyhdlambingan.su |
| 10 | pinoysteleserye.su |
| 10 | pinoyteleseryetambayan.net |
| 10 | pinoytvreplaytambayanlambinganteleserye.su |
| 10 | pinoytvtambayanreplay.su |
| 11 | pinoyreplaytvshows.su |
| 12 | lambingantvofw.su |
| 12 | pinoylambingantvreplay.net |
| 13 | lambingantvteleserye.su |
| 13 | pinoylambinganofw.su |
| 13 | wowlambingan.net |
| 14 | lumangseries.net |
| 15 | mediatechweek.live |
| 16 | moviesnipipay.com |
| 17 | ofwpinoychannel.com |
| 17 | pinoylambingannetwork.com |
| 18 | ofwpinoytvchannel.com |
| 19 | pariwiki.ae |
| 20 | phtv.one |
| 21 | pinoybarkada.org |
| 22 | pinoybays.su |
| 23 | pinoychannel.cc |
| 24 | pinoychannelako.su |
| 25 | pinoyflixtvs.su |
| 25 | pinoystvreplay.su |
| 26 | pinoylambinganteleseryes.su |

| Def. No. | Domain Name |
| --- | --- |
| 27 | pinoylambinganhdreplay.net |
| 27 | pinoylambingantvreplay.su |
| 27 | pinoyslambingantvreplay.su |
| 27 | pinoysreplaytv.su |
| 27 | pinoyteleseryeako.su |
| 27 | pinoyteleseryetambayan.su |
| 27 | pinoytambayanako.su |
| 27 | pinoyteleseryechannel.su |
| 27 | pinoyteleseryereplays.su |
| 28 | pinoymovieseries.com |
| 29 | pinoymovieshub.me |
| 30 | pinoymoviess.su |
| 31 | pinoyreplaylambingan.su |
| 32 | pinoytambayana.su |
| 32 | pinoytvteleseryes.su |
| 33 | pinoyteleseryelive.com |
| 34 | pinoyteleseryetvreplays.su |
| 34 | pinoytvlambinganhd.su |
| 34 | teleseryenetwork.su |
| 35 | pinoytvreplay.ph |
| 36 | pinoytvtambayanreplay.net |
| 37 | replaypinoytv.su |
| 37 | wowpinoytvreplay.su |
| 38 | the--northface.co.uk |
| 39 | lambinganteleserye.su |
| 40 | libangan.ru |
| 41 | beyhadh.su |
| 42 | dramascool.site |
| 43 | driver1.co |
| 44 | hdfullpinoymovies.org |
| 45 | hdfulltagalogmovies.com |
| 46 | pinoystambayan.com |
| 47 | pinoyteleseryetvreplay.su |
| 48 | pinoytvembed.com |
| 49 | pinoytvrecap.com |

**SCHEDULE "B"**
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT**
**INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES**

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 1 | 123fullpinoymovies.com | | | |
| 2 | 2lambingan.su | | Google AdSense, Google LLC | ca-pub-7871331376637780 |
| 3 | citizensdebate.space | | | |
| 4 | dramasmp4hd.com | | | |
| 5 | fantaserye.su | ayyazpinoy@gmail.com fantaserye123@gmail.com | Google AdSense, Google LLC | ca-pub-4334102126010579 |
| 6 | filikula.se | | | |
| 7 | hdfullpinoymovies.xyz | | | |
| 8 | hdpinoy.com | | | |
| 9 | iwantpinoymovies.com | | Google AdSense, Google LLC | ca-host-pub-1556223355139109 |
| 10 | pinoysteleserye.su | herpalasif@gmail.com | Google AdSense, Google LLC | ca-pub-3710301032655649 |
| 10 | pinoytvreplaytambayanlambinganteleserye.su | herpalasif@gmail.com | Google AdSense, Google LLC | ca-pub-1281117908809325 |
| 10 | kipiasoft.su | herpalasif@gmail.com | | |
| 10 | pinoyhdlambingan.su | herpalasif@gmail.com | | |
| 10 | pinoyteleseryetambayan.net | herpalasif@gmail.com | | |
| 10 | pinoytvtambayanreplay.su | herpalasif@gmail.com | | |
| 11 | pinoyreplaytvshows.su | herpalasif41@gmail.com | | |
| 12 | lambingantvofw.su | pinoymovies.su@gmail.com | | |
| 12 | pinoylambingantvreplay.net | PINOYMOVIES.SU@GMAIL.COM | | |
| 13 | pinoylambinganofw.su | qaisrani4051@gmail.com | mgid.com, MGID Inc. MGID UA | pinoylambinganofw.su |
| 13 | lambingantvteleserye.su | qaisrani4051@gmail.com | | |
| 13 | wowlambingan.net | | | |
| 14 | lumangseries.net | | | |
| 15 | mediatechweek.live | | | |
| 16 | moviesnipipay.com | | | |
| 17 | ofwpinoychannel.com | SARATAYLOR621@GMAIL.COM | Google AdSense, Google LLC | ca-pub-3341795281870761 |
| 17 | pinoylambingannetwork.com | | | |
| 18 | ofwpinoytvchannel.com | support@phtv.one | | |

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 19 | pariwiki.ae | waqarkhanmalghani@gmail.com | | |
| 20 | phtv.one | | | |
| 21 | pinoybarkada.org | | | |
| 22 | pinoybays.su | | | |
| 23 | pinoychannel.cc | | Google AdSense, Google LLC | ca-pub-9277427481818043 |
| 24 | pinoychannelako.su | | | |
| 25 | pinoyflixtvs.su | | Google AdSense, Google LLC | ca-pub-2456058618146104 |
| 25 | pinoystvreplay.su | | | |
| 26 | pinoylambinganteleseryes.su | | | |
| 27 | pinoytambayanako.su | javirock906@gmail.com | Google AdSense, Google LLC | ca-pub-1256604383590629 |
| 27 | pinoyteleseryechannel.su | javirock906@gmail.com | Google AdSense, Google LLC | ca-pub-3388398459928305 |
| 27 | pinoylambinganhdreplay.net | | | |
| 27 | pinoylambingantvreplay.su | javirock906@gmail.com | | |
| 27 | pinoyslambingantvreplay.su | javirock906@gmail.com | | |
| 27 | pinoysreplaytv.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryeako.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryetambayan.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryereplays.su | javirock906@gmail.com | | |
| 28 | pinoymovieseries.com | | | |
| 29 | pinoymovieshub.me | | | |
| 30 | pinoymoviess.su | vhungcc.kd@gmail.com admin@aliwan.info | mgid.com, MGID Inc. MGID UA | pinoymoviess.su |
| 31 | pinoyreplaylambingan.su | | | |
| 32 | pinoytambayana.su | | | |
| 32 | pinoytvteleseryes.su | | | |
| 33 | pinoyteleseryelive.com | | Google AdSense, Google LLC | ca-pub-7661799094164390 |
| 34 | pinoyteleseryetvreplays.su | prokatyperry@gmail.com | Google AdSense, Google LLC | ca-pub-3997459580377998 |
| 34 | teleseryenetwork.su | prokatyperry@gmail.com | Google AdSense, Google LLC | ca-pub-6251182036059005 |
| 34 | pinoytvlambinganhd.su | prokatyperry@gmail.com | | |
| 35 | pinoytvreplay.ph | | Google AdSense, Google LLC | ca-pub-2954909540273925 |

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 36 | pinoytvtambayanreplay.net | | Google AdSense, Google LLC | ca-pub-9521322455543763 |
| 37 | replaypinoytv.su | | | |
| 37 | WOWPINOYTVREPLAY.SU | | | |
| 38 | the--northface.co.uk | | Google AdSense, Google LLC | ca-pub-2806149989775352 |
| 39 | lambinganteleserye.su | paktvsite@gmail.com | Google AdSense, Google LLC | ca-pub-1211175972738825 |
| 40 | libangan.ru | | | |
| 41 | beyhadh.su | yehrishtaofficial@gmail.com | | |
| 42 | dramascool.site | | | |
| 43 | driver1.co (framed on mobinews.info) | | Google DoubleClick, Google LLC | div-gpt-ad-1570453497600-0 div-gpt-ad-1570453510905-0 |
| 43 | driver1.co | | | |
| 44 | hdfullpinoymovies.org | | | |
| 45 | hdfulltagalogmovies.com | | | |
| 46 | pinoystambayan.com | | Google AdSense, Google LLC | ca-pub-9273910323402883 |
| 47 | pinoyteleseryetvreplay.su | cuteqaisrani@gmail.com | | |
| 48 | pinoytvembed.com | | | |
| 49 | pinoytvrecap.com | | | |