# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CIV-61628-RAR

**ABS-CBN CORPORATION,** *et al.*,

    Plaintiffs,

v.

**123FULLPINOYMOVIES.COM,** *et al.*,

    Defendants.

_____/

### SEALED ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** comes before the Court on Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [ECF No. 5] ("Application for Temporary Restraining Order") against various Defendants under 15 U.S.C. § 1116, 17 U.S.C. § 502(a), Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a), for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the Copyright Act, 17 U.S.C. § 101 *et seq*. As explained below, Plaintiffs have satisfied the requirements for the issuance of a temporary restraining order.

## BACKGROUND[1]

Plaintiff ABS-CBN International is the registered owner of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "ABS-CBN Registered Marks"):

---

[1] The factual background is taken from Plaintiffs' Complaint [ECF No. 1], Plaintiffs' Application for Temporary Restraining Order [ECF No. 5], and supporting evidentiary submissions. Plaintiffs have also filed declarations and exhibits in support of their Application for Temporary Restraining Order [ECF Nos. 5-1 through 5-3].

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| THE FILIPINO CHANNEL | 1,994,383 | Aug. 20, 1996 | IC 038 – cable television broadcasting<br><br>IC 041 – television show production and programming |
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 036 – telephone calling card services<br><br>IC 038 – Television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Television broadcasting services via satellite and cable<br><br>IC 041 – Production and programming of television shows, entertainment and a variety of programming distributed over television, satellite and via a global computer network |

*See* Declaration of Elisha J. Lawrence [ECF No. 5-1] ¶ 5. The ABS-CBN Registered Marks are used in connection with the creation and distribution of quality entertainment content in the categories identified above. *See* Lawrence Decl. ¶ 5.

Plaintiff ABS-CBN International is further the owner of all rights in and to the following common law trademark ("ABS-CBN Common Law Mark"):

| Trademark |
|---|
|  |

*See* Lawrence Decl. ¶ 6. The ABS-CBN Common Law Mark is used in connection with the creation and distribution of quality entertainment content. *See id.* Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law Mark are referred to as the "ABS-CBN

Marks." Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International share exclusive rights in and to the ABS-CBN Marks. Moreover, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International are all licensed to use and enforce the ABS-CBN Marks. *See id.*

Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies specifically identified in Exhibit 2 to the Complaint [ECF No. 1-3]. *See* Lawrence Decl. ¶ 4. Moreover, Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights, including but not limited to those specifically identified in paragraph 26 of the Complaint and in Exhibit 3 thereto [ECF No. 1-4]. *See* Lawrence Decl. ¶ 4. Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN Film Productions, and ABS-CBN International all share exclusive rights in and to the Copyrighted Works. *See* Lawrence Decl. ¶ 4.

Defendants, through the various Internet websites operating under their domain names identified on Schedule "A" hereto ("Subject Domain Names") have advertised, promoted, offered for distribution, distributed and/or publicly performed the Copyrighted Works under what Plaintiffs have determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the ABS-CBN Marks. *See* Lawrence Decl. ¶¶ 12-15; *see also* Declaration of Christine Ann Daley [ECF No. 6-2] ¶ 2; and Exhibit 3 to the Complaint [ECF No. 1-4].

Although each Defendant may not copy and infringe each of Plaintiffs' trademarks for each category of services protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the ABS-CBN Marks and the Copyrighted Works at issue. *See* Lawrence Decl. ¶¶ 12-15, Exhibit 3 to the Complaint [ECF No. 1-4].

Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the ABS-CBN Marks and/or perform or distribute the Copyrighted Works. *See* Lawrence Decl. ¶¶ 12-15.

As part of its ongoing investigation regarding the infringement of its intellectual property, on behalf of Plaintiffs, Stephen M. Gaffigan, P.A. performed an investigation into the advertising accounts used by Defendants. *See* Daley Decl. ¶ 5. By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names,[2] Stephen M. Gaffigan, P.A. was able to specifically locate and identify many of the advertising revenue accounts of the Defendants, which are identified on Schedule "B," along with Defendants' associated e-mail addresses as identified in the publicly available domain name registration data for Defendants or directly on Defendants' websites operating under the Subject Domain Names. *See* Daley Decl. ¶ 3, 5 n.2. Plaintiffs' representative conducted a review of and visually inspected the Internet websites operating under the Subject Domain Names or the web page captures of the Subject Domain Names and determined the distribution services offered by Defendants were not genuine or authorized distribution services of Plaintiffs' Copyrighted Works. *See* Lawrence Decl., ¶¶ 13-15.

## **LEGAL STANDARD**

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-

---

[2] Several of the Defendants use at least one of their Subject Domain Names to act as a supporting domain name to direct traffic to websites operating under other Subject Domain Names, from which users may view the Copyrighted Works. Accordingly, the web pages for the supporting domain names are included with the web pages to which those sites redirect. *See* Exhibit 3 to the Complaint [ECF No. 1-4]; *see also* Daley Decl. ¶ 2 n. 1; Lawrence Decl. ¶ 13 n. 1. Additionally, Defendant Number 43 uses the domain name "mobinews.info" to frame advertisements on its "driver1.co" domain name. *See* Daley Decl. ¶ 5 n. 2 and Exhibit 1 thereto; Lawrence Decl. ¶ 13 n. 1.

movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## **ANALYSIS**

The declarations Plaintiffs submitted in support of their Application for Temporary Restraining Order support the following conclusions of law:

A. Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, distribution, and public performance of the Copyrighted Works using counterfeits, reproductions, and/or colorable imitations of the ABS-CBN Marks, and that the services Defendants are offering and promoting are unauthorized distribution services using the ABS-CBN Marks.

B. Because of the infringement of the ABS-CBN Marks and Copyrighted Works, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiffs'

Complaint, Application for Temporary Restraining Order, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

1. Defendants own or control Internet websites, domain names, or businesses which advertise, promote, and/or offer distribution services using counterfeit and infringing trademarks and infringe the Copyrighted Works in violation of Plaintiffs' rights;

2. There is good cause to believe that Defendants will continue to violate Plaintiffs' intellectual property rights and offer more distribution services of copyrighted content under counterfeit and infringing versions of Plaintiffs' trademarks; that consumers are likely to be misled, confused, or disappointed by the quality of these services; and that Plaintiffs may suffer loss of sales for their genuine services and an unnatural erosion of the legitimate marketplace in which they operate; and

3. There is good cause to believe that if Plaintiffs proceed on notice to Defendants of this Application for Temporary Restraining Order, Defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect consumer traffic to other websites, corresponding website URLs, thereby thwarting Plaintiffs' ability to obtain meaningful relief.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded services if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiffs, their reputations, and goodwill as a manufacturer and distributor of quality entertainment content if such relief is not issued.

D.    The public interest favors issuance of the temporary restraining order to protect Plaintiffs' trademark and copyright interests and protect the public from being defrauded by the palming off of counterfeit services as Plaintiffs' genuine services.

E.    Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution of and profits from services using counterfeits and infringements of the ABS-CBN Marks and Copyrighted Works.  *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.    Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.    In light of the inherently deceptive nature of the piracy business, and the likelihood that Defendants have violated federal trademark and copyright laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Application for Temporary Restraining Order [ECF No. 5] is **GRANTED**.  A temporary restraining order is entered as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

- a. From advertising, promoting, copying, broadcasting, publicly performing, and/or distributing any of the Plaintiffs' content or copyrighted works, including but not limited to those works specifically identified in paragraph 26 of the Complaint, Exhibit 2 to the Complaint [ECF No. 1-3], and/or Exhibit 3 to the Complaint [ECF No. 1-4];

- b. From advertising, advertising, promoting, offering, distributing, using, and/or causing to be advertised, promoted, offered and/or distributed, any services using the ABS-CBN Marks, or any confusingly similar trademarks, other than those actually offered or distributed by Plaintiffs; and

- c. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any evidence relating to the promotion, advertisement, procurement, and/or distribution of services or copyrighted content bearing or under the ABS-CBN Marks, or any confusingly similar trademarks or public performances or distributions of Plaintiffs' Copyrighted Works; (ii) any assets or other financial accounts subject to this Order, including assets held by any advertising services, including but not limited to those identified on Schedule "B" hereto, in the actual or constructive possession of, or owned, controlled or held by, or subject to access by, any of the Defendants, including but not limited to any assets held by or on behalf of any of the Defendants.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the ABS-CBN Marks or any confusingly similar trademarks, on or in connection with all Internet websites, domain names, or businesses owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names.

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the ABS-CBN Marks and/or the names of the Copyrighted Works, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to websites registered, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names.

(4) Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court.

(5) Each Defendant shall preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order.

(6) Upon Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the

registrant's identity and contact information is ordered to disclose to Plaintiffs the true identities and contact information of those registrants.

(7)     The domain name registrars for the Subject Domain Names shall immediately assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiffs' choosing ("New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names.  To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain (TLD) registries, for the Subject Domain Names, or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names.  Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action.  Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/Bg9mr3/index.html whereon copies of the Complaint, this Order, and all other documents on file in this action are displayed.  Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names,

which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendants.

(8) Upon receipt of notice of this Order, Defendants and the advertising services, networks and/or platforms identified on Schedule "B" hereto ("Advertising Services"), and all financial institutions, payment processors, banks, escrow services, and/or money transmitters, and their related companies and affiliates, shall immediately identify and restrain all funds, as opposed to ongoing account activity, in the advertising accounts related to Defendants, and their associated payment accounts and e-mail addresses, as identified on Schedule "B" hereto, as well as all funds in or which are transmitted into (i) any other accounts of the same customer(s); (ii) any other accounts which transfer funds into the same financial institution/advertising account(s), and/or any of the other accounts subject to this Order; and (iii) any other financial institution/advertising accounts tied to or used by any of the Subject Domain Names identified on Schedule "B" hereto; and immediately divert those restrained funds into a holding account for the trust of the Court.

(9) Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, the Advertising Services identified on Schedule "B" hereto, and their related companies and affiliates, shall further, within five business days of receiving this Order, provide Plaintiffs' counsel with all data that details

(i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or advertising service, including but not limited to the Advertising Services identified on Schedule "B" hereto, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(10) Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(11) This Order shall apply to the Subject Domain Names, associated websites, and any other domain names, websites, corresponding websites' URLs, financial accounts, or advertising services accounts properly brought to the Court's attention and verified by sworn affidavit that such new domain names are being used by Defendants for the purpose of counterfeiting the ABS-CBN Marks, infringing the Copyrighted Works, or unfairly competing with Plaintiffs on the World Wide Web.

(12) This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties.

(13)     As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action or as to which Plaintiffs have withdrawn their request for a temporary restraining order.

(14)     Under 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall post a bond in the amount of $10,000.00 by **August 21, 2020,** as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.  In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(15)     **A telephonic hearing is set before this Court on <u>September 15, 2020, at 10:45 A.M.</u>** at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiffs' requested preliminary injunction.  **The parties are instructed to call 1-877-402-9753 by no later than <u>10:40 A.M.</u> on <u>September 15, 2020</u>.  The access code is 9372453 and the password is 0918.  The Court requires that the Parties appear via a landline (i.e. not a cellular phone or a speaker phone) for clarity.**

(16)     After Plaintiffs' counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiffs shall serve a copy of the Complaint, the Application for Temporary Restraining Order, and this Order, on each Defendant via their corresponding e-mail/online contact form provided on the Internet based e-commerce stores operating under the respective Seller IDs, or by providing a copy of this Order by e-mail to the marketplace platform for each of the Seller IDs so that the marketplace platform, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, Plaintiffs shall post copies of the Complaint, Application for

Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at http://servingnotice.com/Bg9mr3/index.html, and shall provide the address to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiffs shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at http://servingnotice.com/Bg9mr3/index.html, or by other means reasonably calculated to give notice which is permitted by the Court.

(17)   Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Advertising Services as identified on Schedule "B" hereto, shall, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with Defendants' respective advertising accounts and/or Subject Domain Names.

(18)   Any response or opposition to Plaintiffs' Motion for Preliminary Injunction must be filed and served on Plaintiffs' counsel forty-eight (48) hours prior to the hearing. Plaintiffs shall file any Reply Memorandum twenty-four (24) hours prior to the hearing. The above dates may be revised upon stipulation by all parties and approval of this Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

(19)   The Court will consider Plaintiffs' request for a preliminary injunction after notice has been provided to Defendants. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

(20) Under Federal Rule of Civil Procedure 65(b)(2), this Temporary Restraining Order expires at **5:00 P.M.** on **September 15, 2020**, unless extended for good cause.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 17th day of August, 2020.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Def. No. | Domain Name |
|---|---|
| 1 | 123fullpinoymovies.com |
| 2 | 2lambingan.su |
| 3 | citizensdebate.space |
| 4 | dramasmp4hd.com |
| 5 | fantaserye.su |
| 6 | filikula.se |
| 7 | hdfullpinoymovies.xyz |
| 8 | hdpinoy.com |
| 9 | iwantpinoymovies.com |
| 10 | kipiasoft.su |
| 10 | pinoyhdlambingan.su |
| 10 | pinoyteleserye.su |
| 10 | pinoyteleseryetambayan.net |
| 10 | pinoytvreplaytambayanlambinganteleserye.su |
| 10 | pinoytvtambayanreplay.su |
| 11 | pinoyreplaytvshows.su |
| 12 | lambingantvofw.su |
| 12 | pinoylambingantvreplay.net |
| 13 | lambingantvteleserye.su |
| 13 | pinoylambinganofw.su |
| 13 | wowlambingan.net |
| 14 | lumangseries.net |
| 15 | mediatechweek.live |
| 16 | moviesnipipay.com |
| 17 | ofwpinoychannel.com |
| 17 | pinoylambingannetwork.com |
| 18 | ofwpinoytvchannel.com |
| 19 | pariwiki.ae |
| 20 | phtv.one |
| 21 | pinoybarkada.org |
| 22 | pinoybays.su |
| 23 | pinoychannel.cc |
| 24 | pinoychannelako.su |
| 25 | pinoyflixtvs.su |
| 25 | pinoystvreplay.su |

...

| Def. No. | Domain Name |
|---:|---|
| 26 | pinoylambinganteleseryes.su |
| 27 | pinoylambinganhdreplay.net |
| 27 | pinoylambingantvreplay.su |
| 27 | pinoyslambingantvreplay.su |
| 27 | pinoysreplaytv.su |
| 27 | pinoyteleseryeako.su |
| 27 | pinoyteleseryetambayan.su |
| 27 | pinoytambayanako.su |
| 27 | pinoyteleseryechannel.su |
| 27 | pinoyteleseryereplays.su |
| 28 | pinoymovieseries.com |
| 29 | pinoymovieshub.me |
| 30 | pinoymoviess.su |
| 31 | pinoyreplaylambingan.su |
| 32 | pinoytambayana.su |
| 32 | pinoytvteleseryes.su |
| 33 | pinoyteleseryelive.com |
| 34 | pinoyteleseryetvreplays.su |
| 34 | pinoytvlambinganhd.su |
| 34 | teleseryenetwork.su |
| 35 | pinoytvreplay.ph |
| 36 | pinoytvtambayanreplay.net |
| 37 | replaypinoytv.su |
| 37 | wowpinoytvreplay.su |
| 38 | the--northface.co.uk |
| 39 | lambinganteleserye.su |
| 40 | libangan.ru |
| 41 | beyhadh.su |
| 42 | dramascool.site |
| 43 | driver1.co |
| 44 | hdfullpinoymovies.org |
| 45 | hdfulltagalogmovies.com |
| 46 | pinoystambayan.com |
| 47 | pinoyteleseryetvreplay.su |
| 48 | pinoytvembed.com |
| 49 | pinoytvrecap.com |

## SCHEDULE "B"
## DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 1 | 123fullpinoymovies.com | | | |
| 2 | 2lambingan.su | | Google AdSense, Google LLC | ca-pub-7871331376637780 |
| 3 | citizensdebate.space | | | |
| 4 | dramasmp4hd.com | | | |
| 5 | fantaserye.su | ayyazpinoy@gmail.com fantaserye123@gmail.com | Google AdSense, Google LLC | ca-pub-4334102126010579 |
| 6 | filikula.se | | | |
| 7 | hdfullpinoymovies.xyz | | | |
| 8 | hdpinoy.com | | | |
| 9 | iwantpinoymovies.com | | Google AdSense, Google LLC | ca-host-pub-1556223355139109 |
| 10 | pinoyteleserye.su | herpalasif@gmail.com | Google AdSense, Google LLC | ca-pub-3710301032655649 |
| 10 | pinoytvreplaytambayanlambinganteleserye.su | herpalasif@gmail.com | Google AdSense, Google LLC | ca-pub-1281117908809325 |
| 10 | kipiasoft.su | herpalasif@gmail.com | | |
| 10 | pinoyhdlambingan.su | herpalasif@gmail.com | | |
| 10 | pinoyteleseryetambayan.net | herpalasif@gmail.com | | |
| 10 | pinoytvtambayanreplay.su | herpalasif@gmail.com | | |
| 11 | pinoyreplaytvshows.su | herpalasif41@gmail.com | | |
| 12 | lambingantvofw.su | pinoymovies.su@gmail.com | | |
| 12 | pinoylambingantvreplay.net | PINOYMOVIES.SU@GMAIL.COM | | |
| 13 | pinoylambinganofw.su | qaisrani4051@gmail.com | mgid.com, MGID Inc. MGID UA | pinoylambinganofw.su |
| 13 | lambingantvteleserye.su | qaisrani4051@gmail.com | | |
| 13 | wowlambingan.net | | | |
| 14 | lumangseries.net | | | |
| 15 | mediatechweek.live | | | |
| 16 | moviesnipipay.com | | | |
| 17 | ofwpinoychannel.com | SARATAYLOR621@GMAIL.COM | Google AdSense, Google LLC | ca-pub-3341795281870761 |
| 17 | pinoylambingannetwork.com | | | |
| 18 | ofwpinoytvchannel.com | support@phtv.one | | |

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 19 | pariwiki.ae | waqarkhanmalghani@gmail.com | | |
| 20 | phtv.one | | | |
| 21 | pinoybarkada.org | | | |
| 22 | pinoybays.su | | | |
| 23 | pinoychannel.cc | | Google AdSense, Google LLC | ca-pub-9277427481818043 |
| 24 | pinoychannelako.su | | | |
| 25 | pinoyflixtvs.su | | Google AdSense, Google LLC | ca-pub-2456058618146104 |
| 25 | pinoystvreplay.su | | | |
| 26 | pinoylambinganteleseryes.su | | | |
| 27 | pinoytambayanako.su | javirock906@gmail.com | Google AdSense, Google LLC | ca-pub-1256604383590629 |
| 27 | pinoyteleseryechannel.su | javirock906@gmail.com | Google AdSense, Google LLC | ca-pub-3388398459928305 |
| 27 | pinoylambinganhdreplay.net | | | |
| 27 | pinoylambingantvreplay.su | javirock906@gmail.com | | |
| 27 | pinoyslambingantvreplay.su | javirock906@gmail.com | | |
| 27 | pinoysreplaytv.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryeako.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryetambayan.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryereplays.su | javirock906@gmail.com | | |
| 28 | pinoymovieseries.com | | | |
| 29 | pinoymovieshub.me | | | |
| 30 | pinoymoviess.su | vhungcc.kd@gmail.com admin@aliwan.info | mgid.com, MGID Inc. MGID UA | pinoymoviess.su |
| 31 | pinoyreplaylambingan.su | | | |
| 32 | pinoytambayana.su | | | |
| 32 | pinoytvteleseryes.su | | | |
| 33 | pinoyteleseryelive.com | | Google AdSense, Google LLC | ca-pub-7661799094164390 |
| 34 | pinoyteleseryetvreplays.su | prokatyperry@gmail.com | Google AdSense, Google LLC | ca-pub-3997459580377998 |
| 34 | teleseryenetwork.su | prokatyperry@gmail.com | Google AdSense, Google LLC | ca-pub-6251182036059005 |
| 34 | pinoytvlambinganhd.su | prokatyperry@gmail.com | | |
| 35 | pinoytvreplay.ph | | Google AdSense, Google LLC | ca-pub-2954909540273925 |

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 36 | pinoytvtambayanreplay.net | | Google AdSense, Google LLC | ca-pub-9521322455543763 |
| 37 | replaypinoytv.su | | | |
| 37 | WOWPINOYTVREPLAY.SU | | | |
| 38 | the--northface.co.uk | | Google AdSense, Google LLC | ca-pub-2806149989775352 |
| 39 | lambinganteleserye.su | paktvsite@gmail.com | Google AdSense, Google LLC | ca-pub-1211175972738825 |
| 40 | libangan.ru | | | |
| 41 | beyhadh.su | yehrishtaofficial@gmail.com | | |
| 42 | dramascool.site | | | |
| 43 | driver1.co (framed on mobinews.info) | | Google DoubleClick, Google LLC | div-gpt-ad-1570453497600-0 div-gpt-ad-1570453510905-0 |
| 43 | driver1.co | | | |
| 44 | hdfullpinoymovies.org | | | |
| 45 | hdfulltagalogmovies.com | | | |
| 46 | pinoystambayan.com | | Google AdSense, Google LLC | ca-pub-9273910323402883 |
| 47 | pinoyteleseryetvreplay.su | cuteqaisrani@gmail.com | | |
| 48 | pinoytvembed.com | | | |
| 49 | pinoytvrecap.com | | | |