**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CV-61628-RAR**

**ABS-CBN CORPORATION**, *et al.*,

          Plaintiffs,

v.

**123FULLPINOYMOVIES.COM**, *et al.*,

          Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT

**THIS CAUSE** came before the Court on Plaintiffs' Motion for Entry of Final Default Judgment [ECF No. 22] ("Motion"). Plaintiffs seek entry of a default final judgment against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" which operate Internet websites that infringe Plaintiffs' trademarks and advertise, promote, distribute, and perform Plaintiffs' copyrighted works under counterfeits and confusingly similar imitations of Plaintiffs' trademarks. *See generally* Mot.  Plaintiffs request the Court: (1) enjoin Defendants unlawful use of Plaintiffs' trademarks and copyrighted works; (2) disable, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs; (3) assign all rights, title, and interest, to the domain names to Plaintiffs; and (4) award statutory damages. *See generally id.*

A Clerk's Default [ECF No. 21] was entered against Defendants on September 23, 2020, after Defendants failed to respond to the Complaint [ECF No. 1] despite having been served. *See* Proof of Service [ECF No. 17].  The Court having considered the record and noting no opposition to Plaintiffs' Motion, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Entry of Final Default Judgment [ECF No. 22] is **GRANTED** for the reasons stated herein. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a default final judgment will be entered by separate order.

## I.     BACKGROUND[1]

### A.     Factual Background

Plaintiff ABS-CBN International is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "ABS-CBN Registered Marks"):

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| THE FILIPINO CHANNEL | 1,994,383 | Aug. 20, 1996 | IC 038 – cable television broadcasting<br><br>IC 041 – television show production and programming |
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 036 – telephone calling card services<br><br>IC 038 – Television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Television broadcasting services via satellite and cable<br><br>IC 041 – Production and programming of television shows, entertainment and a variety of programming distributed over television, satellite and via a global computer network |

*See* Declaration of Elisha J. Lawrence ("Lawrence Decl.") [ECF No. 5-1] at ¶ 5; [ECF No. 1-2] (containing Certificates of Registrations for the ABS-CBN Registered Marks at issue). The ABS-

---

[1] The factual background is taken from Plaintiffs' Complaint, the Motion, and supporting Declaration submitted by Plaintiffs.

CBN Registered Marks are used in connection with the creation and distribution of quality entertainment content in the categories identified above.  *See* Lawrence Decl. at ¶ 4-5.

Plaintiff ABS-CBN International is further the owner of all rights in and to the following common law trademark (the "ABS-CBN Common Law Mark"):

| Trademark |
| :---: |
|  |

*See* Lawrence Decl. at ¶ 6.  The ABS-CBN Common Law Mark is used in connection with the creation and distribution of quality entertainment content.  *See id.*  Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law Mark are referred to as the "ABS-CBN Marks."  Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International share exclusive rights in and to the ABS-CBN Marks.  Moreover, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International are all licensed to use and enforce the ABS-CBN Marks.  *See id.*

Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies specifically identified in Exhibit 2 to the Complaint, [ECF No. 1-3].  *See* Lawrence Decl. at ¶ 4.  Moreover, Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights, including but not limited to those specifically identified in paragraph 26 of the Complaint and in Exhibit 3 thereto, [ECF No. 1-4].  *See* Lawrence Decl. at ¶ 4.  Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works."  ABS-CBN Corporation, ABS-CBN Film Productions, and ABS-CBN International all share exclusive rights in and to the Copyrighted Works.  *See id.*

Counsel for Plaintiffs performed an investigation into the advertising accounts used by Defendants. *See* Declaration of Christine Ann Daley in Support of Plaintiffs' Application for Entry of TRO ("Daley Decl. in Support of TRO") [ECF No. 5-2] at ¶ 5. By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names, Stephen M. Gaffigan, P.A. was able to specifically locate and identify many of the advertising revenue accounts of the Defendants, which are identified on Schedule "B," along with Defendants' associated e-mail addresses as identified in the publicly available domain name registration data for Defendants or directly on Defendants' websites operating under the Subject Domain Names. *See* Daley Decl. in Support of TRO at ¶¶ 3, 5 n.2. Plaintiffs' representative conducted a review of and visually inspected the Internet websites operating under the Subject Domain Names or the web page captures of the Subject Domain Names and determined the distribution services offered by Defendants were not genuine or authorized distribution services of Plaintiffs' Copyrighted Works. *See* Declaration of Lawrence Decl. at ¶¶ 13-15.

## B.      Procedural Background

On August 11, 2020, Plaintiffs filed their Complaint against Defendants. On August 13, 2020, Plaintiffs filed an *Ex Parte* Motion for Order Authorizing Alternate Service of Process [ECF No. 6] ("Motion for Alternate Service"). The Court entered an Order Granting the Motion for Alternate Service on August 17, 2020 [ECF No. 8]. In accordance with August 17, 2020 Order, Plaintiffs served each Defendant with a Summons and a copy of the Complaint via electronic mail and website posting on August 26, 2020. *See* Declaration of Christine Ann Daley ("Daley Decl.") [ECF No. 22-1] ¶ 4; *see also* Proof of Service [ECF No. 17]. Plaintiffs filed the Proof of Service as to Defendants on September 14, 2020. *See* Proof of Service.

Defendants failed to file an answer or other response, and the time allowed for Defendants to respond to the Complaint has since expired. *See* Daley Decl. ¶¶ 8-9. To Plaintiffs' knowledge, Defendants are not infants or incompetent persons, and the Servicemembers Civil Relief Act does not apply. *See id.* at ¶ 10-11. As no Defendant had timely responded, the Court ordered the clerk to enter a default on September 22, 2020 and ordered Plaintiffs to file a motion for final default judgment ten days thereafter [ECF No. 20]. Subsequently, the Clerk entered Default against Defendants [ECF No. 21] for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Plaintiffs now move the Court for default final judgment against Defendants.

## II.   <u>LEGAL STANDARD</u>

A party may apply to the court for a default judgment when the defendant fails to timely respond to a pleading. Fed. R. Civ. P. 55(b)(2). "A defendant, by his default, admits the plaintiffs' well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (internal quotations omitted) (quoting *Nishimatsu. Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)). However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Management LLC*, No. 14-CV-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) (citation omitted). Therefore, a court may only enter a default judgment if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would

be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1217, 1223 (finding an evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martnez Corp.*, No. 14-CV-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

### III.    ANALYSIS

#### A.    Claims

Plaintiffs seek a default judgment for the relief sought in the Complaint, asserting the following claims against Defendants: (1) trademark counterfeiting and infringement under section 32 of the Lanham Act, in violation of 15 U.S.C. section 1114 ("Claim 1"); (2) false designation of origin under section 43(a) of the Lanham Act, in violation of 15 U.S.C. section 1125(a) ("Claim 2"); (3) unfair competition under Florida common law ("Claim 3"); (4) trademark infringement under Florida common law ("Claim 4"); (5) direct infringement of Copyright (Claim "5"); and (6) contributory infringement of Copyright ("Claim 6"). *See* Compl. ¶¶ 76-130.

##### 1.    Counterfeiting and Infringement

Section 32 of the Lanham Act, 15 U.S.C. section 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (alterations added). To prevail on its trademark infringement claim, a plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or

confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote and citations omitted).

### 2.    False Designation of Origin

The test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring in the judgment).

### 3.    Common Law Unfair Competition

Whether a defendant's use of a plaintiffs' trademarks created a likelihood of confusion between the plaintiffs' and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-CV-8381, 1986 WL 15668, at *3-4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . The proper test is 'likelihood of confusion . . . .'").

### 4.    Common Law Trademark Infringement

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act. *See PetMed Express, Inc.*, 336 F. Supp. 2d 1217-18.

### 5.    Direct Infringement of Copyright

To prevail on a claim of direct infringement of copyright pursuant to the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4), Plaintiffs must "satisfy two requirements to present a prima facie case of direct copyright infringement: (1) they must show ownership of the allegedly infringed material, and (2) they must demonstrate that the alleged infringers violated at least one exclusive

right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Disney Enters. v. Hotfile Corp.*, No. 11-CV-20427, 2013 WL 6336286, at *29-30 (S.D. Fla. Sept. 20, 2013).

### 6.      Contributory Infringement of Copyright

To establish a cause of action for secondary (contributory) infringement of copyright, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement. *See Tiffany (NJ), LLC v. Liu Dongping*, No. 10-CV-61214, 2010 WL 11437255 (S.D. Fla. Oct. 29, 2010).

### B.      Liability

The well-pleaded factual allegations of Plaintiffs' Complaint properly contain the elements for each of the above claims and are admitted by virtue of Defendants' defaults. *See* Compl. ¶¶ 1-4, 36-45, 47, 49-62, 65-69, 77-80, 85-88, 93-94, 98-99, 103-106, 115-122. Moreover, the Complaint's factual allegations have been substantiated by sworn declarations and other evidence and establish Defendants' liability for each of the claims asserted. Accordingly, default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure is appropriately entered against Defendants.

### C.      Relief

Plaintiffs requests entry of equitable relief and monetary damages against Defendants for trademark infringement in Claim 1, and Direct Infringement of Copyright in Claim 5. The Court analyzes Plaintiffs' request for relief as to Claim 1 and Claim 5 only, as the judgment for Claims 2, 3, and 4—false designation of origin, common law unfair competition, and common law trademark infringement—is limited to entry of the requested equitable relief for Claim 1. *See generally* Mot.

*Injunctive Relief*.  Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (alteration in original) (internal quotation marks omitted) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Injunctive relief is available even in the default judgment setting, *see, e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23, because Defendants' failure to respond or otherwise appear makes it difficult for plaintiffs to prevent further infringement absent an injunction.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.") (alteration added).

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  *See eBay, Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391-92 (2006).  Plaintiffs have carried their burden on each of the four factors.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm."  *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added) (footnote omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of

thousands of pairs of counterfeit jeans would damage [the plaintiffs'] business reputation and decrease its legitimate sales.") (alteration added).  Plaintiffs' Complaint and the submissions show, that the distribution services of Plaintiffs' Copyrighted Works promoted, advertised, and offered by Defendants are nearly identical to Plaintiffs' genuine distribution services for their copyrighted content and that consumers viewing Defendants' counterfeit services would actually confuse them for Plaintiffs' genuine services.  *See* Compl. ¶¶ 61-62 ("The net effect of Defendants' actions will cause confusion of consumers at the time of initial interest and during the use of the Defendants' illegal distribution services on their websites operating under the Subject Domain Names, who will believe Defendants' websites are legitimate, authorized distributors of ABS-CBN's Copyrighted Works or are authorized and/or approved by ABS-CBN.").

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names because Plaintiffs cannot control the quality of what appears to be their distribution services in the marketplace.  An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill if Defendants' infringing and counterfeiting continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their reputation in the marketplace.  By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks and copyrights.  Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' services.  *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1238, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.") (alteration added); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-CV-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the

potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (alterations added; citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole." (citations omitted)). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact the plaintiff did not own a trademark in the term "Yesmoke" and noting 15 U.S.C. section 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. section 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.

Ordering the cancellation or transfer of the Subject Domain Names at issue to Plaintiffs, where they may be disabled from further use as platforms for the illegal distribution of copyrighted works under the infringing marks is appropriate to achieve this end.

*Statutory Damages.*    In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of service or good.  *See* 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of service or good. *See* 15 U.S.C. § 1117(c)(2).

The Court has wide discretion to determine the amount of statutory damages.  *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citations omitted).  An award of statutory damages is appropriate despite a plaintiffs' inability to prove actual damages caused by a defendant's infringement.  *See Ford Motor Co.*, 441 F. Supp. 2d at 852 (citations omitted) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.") (alteration added); *Playboy Enters., Inc. v. Universal Tel-A-Talk*, *Inc.*, No. 96-CV-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits).  The option of a statutory damages remedy in trademark counterfeiting cases is sensible given evidence of a defendant's profits in such cases is frequently almost impossible to ascertain.  *See, e.g.,* S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "[e]specially

appropriate in default judgment cases due to infringer nondisclosure") (alteration added; citations omitted).  This case is no exception.

Here, the allegations of the Complaint and the evidence establish the Defendants intentionally copied one or more of the ABS-CBN Marks for the purpose of deriving the benefit of Plaintiffs' world-famous reputation.  Defendants have defaulted on Plaintiffs allegations of willfulness.  *See* Compl. ¶¶ 1, 5, 61, 108, 125; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (citation omitted) (finding a court may infer willfulness from the defendants' default); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (stating that upon default, well plead allegations are taken as true).  As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The only available evidence demonstrates that each Defendant promoted, distributed, advertised, and/or offered content distribution services using at least one mark which was a counterfeit of at least one of the ABS-CBN Marks protected by federal trademark registrations.  *See* Compl. ¶¶ 1-4, 36-45, 47, 49-62, 65-69, 77-80, 85-88, 93-94, 98-99, 103-106, 115-122; Lawrence Decl. ¶¶ 5-6, 12-15.  Based on the above considerations, Plaintiffs have asked the Court to award statutory damages in the amount of $1,000,000.00 against each Defendant, based upon the Court's finding that the Defendants infringed at least one trademark on one type of service.  The Court considered both the willfulness of the Defendants' conduct and the deterrent value of the award imposed, and the award falls within the permissible statutory range under 15 U.S.C. section 1117(c).  *See* Mot. 15.  The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. section 1117(c).  The Court finds that this award

of statutory damages falls within the permissible range under 15 U.S.C. section 1117(c) and is just. *See Fendi, S.r.l. v. socjmkfn*, No. 18-CV-63101 (S.D. Fla. 2019) [ECF No. 44] (awarding plaintiff $1,000,000.00 against each defendant); *Louis Vuitton Malletier, S.A. v. 98lvshop.com*, No. 18-CV-62351 (S.D. Fla. 2019) [ECF No. 26] (awarding plaintiff $1,000,000.00 against each defendant); *Chanel, Inc. v. 2creplicachanel.com*, No. 19-CV-60153 (S.D. Fla. 2019) [ECF Nos. 16 and 17] (awarding plaintiff $1,000,000.00 against each defendant); *Tiffany (NJ) LLC v. discountiffany.com*, No. 18-CV-62831 (S.D. Fla. 2019) [ECF Nos. 29 and 30] (awarding plaintiff $1,000,000.00 against each defendant); *Chanel, Inc. v. icheapgrandtrade.ru*, No. 17-CV-61179 (S.D. Fla. 2017) [ECF Nos. 25 and 26] (awarding plaintiff $2,000,000.00 against defendant); *Specialized Bicycle Components, Inc. v. bobjerseys.com*, No. 14-CV-61806 (S.D. Fla. 2015) [ECF No. 50] (awarding plaintiff $2,000,000.00 against each defendant).

Plaintiffs' Complaint also sets forth a cause of action for direct infringement of copyright under 17 U.S.C. § 504. Title 17, U.S.C. § 504(c) provides that a copyright owner may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $750 or more than $30,000.00 as the court considers just. 17 U.S.C. § 504(c)(1). In addition, if the Court finds that Defendant's copyright infringement was willful, it may impose damages above the maximum limit up to a sum of not more than $150,000.00. Pursuant to 17 U.S.C. § 504(c), Plaintiffs have elected to recover an award of statutory damages as to Count V of the Complaint.

The Court has wide discretion to set an amount of statutory damages. *See Tiffany (NJ), LLC v. Liu Dongping*, No. 10-CV-61214, 2010 WL 11437255 (S.D. Fla. Oct. 29, 2010). An award of statutory damages is appropriate because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiffs or of the profits reaped by the

Defendant.  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  "A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers.  It would fall short of an effective sanction for enforcement of the copyright policy.  The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes."  *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally infringed Plaintiffs' Copyrighted Works for the purpose of deriving the benefit of the value of Plaintiffs' Copyrighted Works in order to drive viewers to their Internet websites operating under the Subject Domain Names for profit.  As such, the Copyright Act provides for damages in a sum of not less than $750.00 or more than $30,000.00 per work as the court considers just. 17 U.S.C. § 504(c)(1).  In addition, if the Court finds that Defendants' copyright infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00."  17 U.S.C. § 504(c)(2).

The evidence in this case demonstrates that Defendant Number 1 - 123fullpinoymovies.com, Defendant Number 6 - filikula.se, Defendant Number 7 - hdfullpinoymovies.xyz, Defendant Number 9 - iwantpinoymovies.com, Defendant Number 16 - moviesnipipay.com, Defendant Number 21 - pinoybarkada.org, Defendant Number 28 - pinoymovieseries.com, Defendant Number 29 - pinoymovieshub.me, Defendant Number 30 - pinoymoviess.su, Defendant Number 44 - hdfullpinoymovies.org, and Defendant Number 45 - hdfulltagalogmovies.com each infringed at least one registered copyright of Plaintiffs as outlined on Schedule "C" hereto.  *See* Compl. ¶¶ 102-108.  Plaintiffs suggest the Court award the highest

award per work for non-willful infringement, $30,000.00, despite Defendants defaulting on Plaintiffs' allegations of willfulness. The award is sufficient to deter Defendants and others from continuing to infringe Plaintiffs' copyrights, compensate Plaintiffs, and punish Defendants. The Court finds that this award of statutory damages falls within the permissible statutory range under 17 U.S.C. § 504(c) and is just.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff is entitled to the entry of final default judgment. Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Entry of Final Default Judgment [**ECF No. 22**] is **GRANTED**.  Default final judgment and a permanent injunction shall be entered by separate order.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 20th day of October, 2020.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

## SCHEDULE "A"

## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Def. No. | Domain Name |
|---|---|
| 1 | 123fullpinoymovies.com |
| 2 | 2lambingan.su |
| 3 | citizensdebate.space |
| 4 | dramasmp4hd.com |
| 5 | fantaserye.su |
| 6 | filikula.se |
| 7 | hdfullpinoymovies.xyz |
| 8 | hdpinoy.com |
| 9 | iwantpinoymovies.com |
| 10 | kipiasoft.su |
| 10 | pinoyhdlambingan.su |
| 10 | pinoysteleserye.su |
| 10 | pinoyteleseryetambayan.net |
| 10 | pinoytvreplaytambayanlambinganteleserye.su |
| 10 | pinoytvtambayanreplay.su |
| 11 | pinoyreplaytvshows.su |
| 12 | lambingantvofw.su |
| 12 | pinoylambingantvreplay.net |
| 13 | lambingantvteleserye.su |
| 13 | pinoylambinganofw.su |
| 13 | wowlambingan.net |
| 14 | lumangseries.net |
| 15 | mediatechweek.live |
| 16 | moviesnipipay.com |
| 17 | ofwpinoychannel.com |
| 17 | pinoylambingannetwork.com |
| 18 | ofwpinoytvchannel.com |
| 19 | pariwiki.ae |
| 20 | phtv.one |
| 21 | pinoybarkada.org |
| 22 | pinoybays.su |
| 23 | pinoychannel.cc |
| 24 | pinoychannelako.su |
| 25 | pinoyflixtvs.su |
| 25 | pinoystvreplay.su |

| Def. No. | Domain Name |
|---|---|
| 26 | pinoylambinganteleseryes.su |
| 27 | pinoylambinganhdreplay.net |
| 27 | pinoylambingantvreplay.su |
| 27 | pinoyslambingantvreplay.su |
| 27 | pinoysreplaytv.su |
| 27 | pinoyteleseryeako.su |
| 27 | pinoyteleseryetambayan.su |
| 27 | pinoytambayanako.su |
| 27 | pinoyteleseryechannel.su |
| 27 | pinoyteleseryereplays.su |
| 28 | pinoymovieseries.com |
| 29 | pinoymovieshub.me |
| 30 | pinoymoviess.su |
| 31 | pinoyreplaylambingan.su |
| 32 | pinoytambayana.su |
| 32 | pinoytvteleseryes.su |
| 33 | pinoyteleseryelive.com |
| 34 | pinoyteleseryetvreplays.su |
| 34 | pinoytvlambinganhd.su |
| 34 | teleseryenetwork.su |
| 35 | pinoytvreplay.ph |
| 36 | pinoytvtambayanreplay.net |
| 37 | replaypinoytv.su |
| 37 | wowpinoytvreplay.su |
| 38 | the--northface.co.uk |
| 39 | lambinganteleserye.su |
| 40 | libangan.ru |
| 41 | beyhadh.su |
| 42 | dramascool.site |
| 43 | driver1.co |
| 44 | hdfullpinoymovies.org |
| 45 | hdfulltagalogmovies.com |
| 46 | pinoystambayan.com |
| 47 | pinoyteleseryetvreplay.su |
| 48 | pinoytvembed.com |
| 49 | pinoytvrecap.com |

**SCHEDULE "B"**

**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES**

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 1 | 123fullpinoymovies.com | | | |
| 2 | 2lambingan.su | | Google AdSense, Google LLC | ca-pub-7871331376637780 |
| 3 | citizensdebate.space | | | |
| 4 | dramasmp4hd.com | | | |
| 5 | fantaserye.su | ayyazpinoy@gmail.com fantaserye123@gmail.com | Google AdSense, Google LLC | ca-pub-4334102126010579 |
| 6 | filikula.se | | | |
| 7 | hdfullpinoymovies.xyz | | | |
| 8 | hdpinoy.com | | | |
| 9 | iwantpinoymovies.com | | Google AdSense, Google LLC | ca-host-pub-1556223355139109 |
| 10 | pinoysteleserye.su | herpalasif@gmail.com | Google AdSense, Google LLC | ca-pub-3710301032655649 |
| 10 | pinoytvreplaytambayanlambinganteleserye.su | herpalasif@gmail.com | Google AdSense, Google LLC | ca-pub-1281117908809325 |
| 10 | kipiasoft.su | herpalasif@gmail.com | | |
| 10 | pinoyhdlambingan.su | herpalasif@gmail.com | | |
| 10 | pinoyteleseryetambayan.net | herpalasif@gmail.com | | |
| 10 | pinoytvtambayanreplay.su | herpalasif@gmail.com | | |
| 11 | pinoyreplaytvshows.su | herpalasif41@gmail.com | | |
| 12 | lambingantvofw.su | pinoymovies.su@gmail.com | | |
| 12 | pinoylambingantvreplay.net | PINOYMOVIES.SU@GMAIL.COM | | |
| 13 | pinoylambinganofw.su | qaisrani4051@gmail.com | mgid.com, MGID Inc. MGID UA | pinoylambinganofw.su |
| 13 | lambingantvteleserye.su | qaisrani4051@gmail.com | | |
| 13 | wowlambingan.net | | | |
| 14 | lumangseries.net | | | |

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 15 | mediatechweek.live | | | |
| 16 | moviesnipipay.com | | | |
| 17 | ofwpinoychannel.com | SARATAYLOR621@GMAIL.COM | Google AdSense, Google LLC | ca-pub-3341795281870761 |
| 17 | pinoylambingannetwork.com | | | |
| 18 | ofwpinoytvchannel.com | support@phtv.one | | |
| 19 | pariwiki.ae | waqarkhanmalghani@gmail.com | | |
| 20 | phtv.one | | | |
| 21 | pinoybarkada.org | | | |
| 22 | pinoybays.su | | | |
| 23 | pinoychannel.cc | | Google AdSense, Google LLC | ca-pub-9277427481818043 |
| 24 | pinoychannelako.su | | | |
| 25 | pinoyflixtvs.su | | Google AdSense, Google LLC | ca-pub-2456058618146104 |
| 25 | pinoystvreplay.su | | | |
| 26 | pinoylambinganteleseryes.su | | | |
| 27 | pinoytambayanako.su | javirock906@gmail.com | Google AdSense, Google LLC | ca-pub-1256604383590629 |
| 27 | pinoyteleseryechannel.su | javirock906@gmail.com | Google AdSense, Google LLC | ca-pub-3388398459928305 |
| 27 | pinoylambinganhdreplay.net | | | |
| 27 | pinoylambingantvreplay.su | javirock906@gmail.com | | |
| 27 | pinoyslambingantvreplay.su | javirock906@gmail.com | | |
| 27 | pinoysreplaytv.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryeako.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryetambayan.su | javirock906@gmail.com | | |
| 27 | pinoyteleseryereplays.su | javirock906@gmail.com | | |
| 28 | pinoymovieseries.com | | | |
| 29 | pinoymovieshub.me | | | |

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 30 | pinoymoviess.su | vhungcc.kd@gmail.com admin@aliwan.info | mgid.com, MGID Inc. MGID UA | pinoymoviess.su |
| 31 | pinoyreplaylambingan.su | | | |
| 32 | pinoytambayana.su | | | |
| 32 | pinoytvteleseryes.su | | | |
| 33 | pinoyteseryelive.com | | Google AdSense, Google LLC | ca-pub-7661799094164390 |
| 34 | pinoyteleseryetvreplays.su | prokatyperry@gmail.com | Google AdSense, Google LLC | ca-pub-3997459580377998 |
| 34 | teleseryenetwork.su | prokatyperry@gmail.com | Google AdSense, Google LLC | ca-pub-6251182036059005 |
| 34 | pinoytvlambinganhd.su | prokatyperry@gmail.com | | |
| 35 | pinoytvreplay.ph | | Google AdSense, Google LLC | ca-pub-2954909540273925 |
| 36 | pinoytvtambayanreplay.net | | Google AdSense, Google LLC | ca-pub-9521322455543763 |
| 37 | replaypinoytv.su | | | |
| 37 | WOWPINOYTVREPLAY.SU | | | |
| 38 | the--northface.co.uk | | Google AdSense, Google LLC | ca-pub-2806149989775352 |
| 39 | lambinganteleserye.su | paktvsite@gmail.com | Google AdSense, Google LLC | ca-pub-1211175972738825 |
| 40 | libangan.ru | | | |
| 41 | beyhadh.su | yehrishtaofficial@gmail.com | | |
| 42 | dramascool.site | | | |
| 43 | driver1.co (framed on mobinews.info) | | Google DoubleClick, Google LLC | div-gpt-ad-1570453497600-0 div-gpt-ad-1570453510905-0 |
| 43 | driver1.co | | | |

| Def. No. | Domain Name | Associated E-mail Addresses | Advertising Service/Platform | Account Identifier |
|---|---|---|---|---|
| 44 | hdfullpinoymovies.org | | | |
| 45 | hdfulltagalogmovies.com | | | |
| 46 | pinoystambayan.com | | Google AdSense, Google LLC | ca-pub-9273910323402883 |
| 47 | pinoyteleseryetvreplay.su | cuteqaisrani@gmail.com | | |
| 48 | pinoytvembed.com | | | |
| 49 | pinoytvrecap.com | | | |

**SCHEDULE "C"**
**REGISTERED COPYRIGHTED WORKS INFRINGED BY DEFENDANTS**

| Def. No. | Subject Domain Name | Registered Works Infringed | Registration Number/Date |
|---|---|---|---|
| 1 | 123fullpinoymovies.com | Hello, Love, Goodbye, [ECF No. 1-4] at pp. 2-5 | PA 2-217-722, December 17, 2019 [ECF No. 1-3] at p. 3 |
| 6 | filikula.se | The Hows of Us, [ECF No. 1-4] at pp. 34-37 | PA 2-192-077, June 10, 2019 [ECF No. 1-3] at p. 5 |
| 7 | hdfullpinoymovies.xyz | Hello, Love, Goodbye, [ECF No. 1-4] at pp. 43-46 | PA 2-217-722, December 17, 2019 [ECF No. 1-3] at p. 3 |
| 9 | iwantpinoymovies.com | Sin Island, [ECF No. 1-4] at pp. 56-60; Hello, Love, Goodbye, [ECF No. 1-4] at pp. 61-63 | PA 2-120-607, April 30, 2018 [ECF No. 1-3] at p. 9 PA 2-217-722, December 17, 2019 [ECF No. 1-3] at p. 3 |
| 16 | moviesnipipay.com | Barcelona: A Love Untold, [ECF No. 1-4] at pp. 89-92 | PA 2-082-515, May 23, 2017 [ECF No. 1-3] at p. 2 |
| 21 | pinoybarkada.org | The Hows of Us, [ECF No. 1-4] at pp. 109-113 | PA 2-192-077, June 10, 2019 [ECF No. 1-3] at p. 5 |
| 28 | pinoymovieseries.com | Hello, Love, Goodbye, [ECF No. 1-4] at pp. 146-149 | PA 2-217-722, December 17, 2019 [ECF No. 1-3] at p. 3 |
| 29 | pinoymovieshub.me | Sin Island, [ECF No. 1-4] at pp. 150-153 | PA 2-120-607, April 30, 2018 [ECF No. 1-3] at p. 9 |
| 30 | pinoymoviess.su | Sin Island, [ECF No. 1-4] at pp. 154-157 | PA 2-120-607, April 30, 2018 [ECF No. 1-3] at p. 9 |
| 44 | hdfullpinoymovies.org | Sin Island, [ECF No. 1-4] at pp. 38-42 | PA 2-120-607, April 30, 2018 [ECF No. 1-3] at p. 9 |
| 45 | hdfulltagalogmovies.com | James & Pat & Dave [ECF No. 1-4] at pp. 47-51 | PA 2-231-751, February 24, 2020 [ECF No. 1-3] at p. 7 |